2007-NMCA-092

164 P.3d 958

**AMERICAN CIVIL LIBERTIES UNION of New Mexico and Peter G. Simonson, Plaintiffs–Appellees,**

v.

**CITY OF ALBUQUERQUE, Defendant–Appellant.**

No. 26,143.

Court of Appeals of New Mexico.

May 2, 2007.

Certiorari Granted, No. 30,415, July 20, 2007.

ACLU of New Mexico, George Bach, Ousama M. Rasheed Law Office, Ousama M. Rasheed, Revo Law Firm, Roger I. Smith, Kennedy & Han P.C., Paul J. Kennedy, Albuquerque, NM, for Appellees.

City of Albuquerque Legal Department, Robert M. White, City Attorney, Peter Pierotti, Assistant City Attorney, Albuquerque, NM, for Appellant.

## OPINION

ALARID, Judge.

{1} Defendant City of Albuquerque (the City) appeals the trial court's decision issuing a permanent injunction enjoining the City from enforcing Ordinance Bill No. O–05–113 (the Ordinance). The trial court determined that the Ordinance is unconstitutional and denied various motions filed by the City, including a motion to dismiss the case due to lack of standing by Plaintiffs. We hold that Plaintiffs did not have standing to challenge the Ordinance in this case. Based on the lack of standing, the trial court's decision is reversed, and the permanent injunction is dissolved.

## BACKGROUND

{2} The ACLU, along with two named Plaintiffs, filed a complaint for injunctive and declaratory relief asking that the Ordinance be declared unconstitutional and that a permanent injunction be issued preventing the City from enforcing the Ordinance. In its complaint, the ACLU alleged that it had "standing to vindicate the public interest in matters of great public interest and importance," and to "vindicate the interest of its members who will be subject to [the Ordinance], and whose rights, status or other legal relations are affected by [the Ordinance]." One of the two named Plaintiffs was dismissed by stipulation. The remaining Plaintiff, Peter Simonson, is the executive director and a member of the New Mexico ACLU. The ACLU and Mr. Simonson are referred to in this opinion as Plaintiffs.

{3} The challenged Ordinance includes a section titled, Vehicle Nuisance, and sets out procedures for seizure, forfeiture, or immobilization of vehicles that are declared to be a nuisance. Section 7-6-2 of the Ordinance, pertaining to Vehicle Nuisance, states:

A motor vehicle is hereby declared to be a nuisance and subject to immediate seizure and forfeiture pursuant to the provisions of this article if it is:

(A) Operated by a person who has been arrested for an offense of driving under the influence of intoxicating liquor or drugs, and/or

(B) Operated by a person whose license is suspended or revoked as a result of conviction for driving while intoxicated or suspended or revoked as a result of a driving while intoxicated arrest.

Section 7-6-4 of the Ordinance provides that a motor vehicle that has been declared a "vehicle nuisance" is subject to "temporary seizure or permanent forfeiture." Section 7-6-5 describes the procedure for forfeiture of a motor vehicle seized under the Ordinance. Notice of forfeiture is served on the person from whom the vehicle was seized and mailed postage pre-paid to the lawfully registered owner of the vehicle. The owner may request a hearing, and, within twenty days of the request for hearing, a hearing is set at which it will be determined whether there was probable cause to seize the vehicle. Section 7-6-6 provides that an officer may offer the vehicle owner an opportunity to request the alternative of immobilization of the vehicle, and outlines the procedure for immobilization of a temporarily seized motor vehicle.

{4} Among various pleadings filed by the parties below, the City filed a motion to dismiss for lack of standing and Plaintiffs filed a motion for permanent injunction. The City's motion was denied. The trial court granted Plaintiffs' motion for permanent injunction based on a finding that the Ordinance provides insufficient procedural due process because it states, a "city hearing officer shall *only* determine whether the law enforcement officer had probable cause *to seize the vehicle,*" rather than determine whether there was probable cause for arrest. The City appealed that decision.

## DISCUSSION

{5} The challenged Ordinance in this case is an amended version of the ordinance discussed in *City of Albuquerque v. One (1) 1984 White Chevy Ut.,* 2002-NMSC-014, ¶ 19, 132 N.M. 187, 46 P.3d 94, which allowed civil forfeiture of vehicles driven by "repeat offenders" of driving while intoxicated (DWI) who were "driving on a suspended or revoked drivers license." The Ordinance, as amended, pertains to vehicle nuisances and forfeiture of vehicles operated by persons merely arrested for the suspicion of DWI, in addition to the repeat offenders targeted in the previous version. The Ordinance became effective on May 11, 2005, and the ACLU filed its complaint on that same day. The Ordinance has never been enforced as amended. As discussed in this opinion, we reverse the trial court's decision and hold that Plaintiffs lacked standing to challenge the Ordinance. Because we decide that Plaintiffs do not have standing to challenge the Ordinance, we do not address arguments made by the parties that pertain to the merits of the case.

### 1. Standard of Review

{6} On review of the denial of a motion to dismiss, we accept all of the material allegations in the complaint as true, and we construe the complaint in favor of Plaintiffs. *See Forest Guardians v. Powell,* 2001-NMCA-028, ¶ 5, 130 N.M. 368, 24 P.3d 803. Standing involves a question of law, which we review de novo. *Id.* The determination of standing prevents improper plaintiffs from bringing suit by focusing on the parties filing a complaint, and does not involve the examination of the issues or the merits of a case. *See De Vargas Sav. & Loan Ass'n v. Campbell,* 87 N.M. 469, 471, 535 P.2d 1320, 1322 (1975). "The requirements for standing derive from constitutional provisions, enacted statutes and rules, and prudential considerations." *John Does v. Roman Catholic Church of the Archdiocese of Santa Fe, Inc.,* 1996-NMCA-094, ¶ 25, 122 N.M. 307, 924 P.2d 273.

### A. Standing

{7} Under our Constitution, in order to have standing, a plaintiff must estab-

lish that there is "(1) an injury in fact, (2) a causal relationship between the injury and the challenged conduct, and (3) a likelihood that the injury will be redressed by a favorable decision." *Forest Guardians,* 2001–NMCA–028, ¶ 16, 130 N.M. 368, 24 P.3d 803 (quoting *John Does,* 1996–NMCA–094, ¶ 28, 122 N.M. 307, 924 P.2d 273) (internal quotation marks omitted). An "injury in fact" is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* ¶ 24 (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)) (internal quotation marks omitted). A plaintiff must have suffered an injury "in a personal and individual way." *Id.* Standing is related to ripeness because if a threatened injury is sufficiently imminent to establish standing, the constitutional requirements for ripeness are met. *See ACLU v. Johnson,* 194 F.3d 1149, 1155 (10th Cir.1999). Generally, the purpose of ripeness is to "conserve judicial machinery for problems which are real and present or imminent, not to squander it on abstract or hypothetical or remote problems." *N.M. Indus. Energy Consumers v. N.M. Pub. Serv. Comm'n,* 111 N.M. 622, 629–30, 808 P.2d 592, 599–600 (1991) (citation and internal quotation marks omitted).

{8} Plaintiffs contend that they have standing to challenge the constitutionality of the Ordinance under requirements for traditional standing, organizational standing, facial constitutional challenge of the Ordinance, and the doctrine of great public importance. We address these arguments below.

## B. Traditional Standing

■ {9} Plaintiffs contend that the Ordinance places all drivers within the city limits "in imminent harm of an injury in fact." According to Plaintiffs, the Ordinance "punishes based on *arrest,* not upon a finding of guilt," and, in doing so, "thwarts the constitutional presumption of innocence and poses concrete and particularized harm to all Albuquerque drivers." Plaintiffs argue that, since it is not illegal to drive a vehicle or to drink before driving a vehicle, so long as the driver's blood alcohol concentration is within

statutory limits, the Ordinance potentially subjects drivers who drink, but are not intoxicated under our laws, to the threat of forfeiture of the vehicle that they are driving. The hypothetical case posed by Plaintiffs has not occurred. In fact, under the Ordinance, forfeiture of a vehicle by Plaintiffs is possible only if certain contingencies take place. Forfeiture of Simonson's vehicle, for example, could occur if: (1) he drinks an amount of alcohol that does not raise his blood alcohol concentration above statutory limits, (2) he is stopped by police and arrested for driving while intoxicated, (3) he has his vehicle seized, (4) he requests a hearing as provided by Section 7-6-5 of the Ordinance, (5) the hearing officer finds that police did have probable cause to seize the vehicle, and (6) the City is successful in obtaining an order of forfeiture from the district court. None of the events described above have occurred, and there is nothing to indicate that any of the events are about to occur. *Cf. Climax Chem. Co. v. N.M. Envtl. Improvement Bd.,* 106 N.M. 14, 18, 738 P.2d 132, 136 (Ct.App. 1987) (citing to *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 497, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982), for the proposition that the theoretical possibility that an ordinance will be enforced in a discriminatory manner is of no due process significance unless that possibility ripens into prosecution); *State v. Chavez,* 98 N.M. 61, 63, 644 P.2d 1050, 1052 (Ct.App. 1982) (defining "[i]mminent," in the context of whether there are exigent circumstances under the Fourth Amendment, as "about to happen," "ready to take place," and "near at hand" (internal quotation marks and citations omitted)). Plaintiffs, therefore, have not demonstrated that they have suffered an injury in fact or that they are in imminent harm of suffering an injury in fact as a result of the Ordinance.

{10} Plaintiffs argue that the "injury in fact" in *De Vargas* was "much more hypothetical than the injury" in this case. In *De Vargas,* the State supervisor of the banking department authorized a building association from Los Alamos, New Mexico to operate a branch office in Santa Fe, New Mexico. 87 N.M. at 470, 535 P.2d at 1321. A group of savings and loan associations in Santa Fe

claimed that they would suffer "undue competitive injury" if another office was allowed to operate in Santa Fe because there was not sufficient business and another office would be of no advantage to the community. *Id.* at 473, 535 P.2d at 1324. The Supreme Court found that the appellants' claims were sufficient, and that the particular interests asserted by the appellants were specifically protected by statute. *Id.* Therefore, the petitioners had standing.

{11} *De Vargas* involved a specific administrative decision concerning specific parties. In this case, there has been no specific decision concerning specific parties. The Ordinance has not been applied to any particular individual. Thus, Plaintiffs have failed to establish the first requirement for standing to challenge the Ordinance.

## C. Organizational Standing

{12} ACLU claims that it has organizational standing to challenge the Ordinance based on its assertion that it has met the traditional standing requirements, and the interests of its members are "germane" to its purpose of "defending the Bill of Rights." ACLU states that "neither the claim nor relief requires the participation of individual members."

[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Forest Guardians,* 2001–NMCA–028, ¶ 21, 130 N.M. 368, 24 P.3d 803 (quoting *Hunt v. Washington State Apple Adver. Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977)). As discussed above, neither ACLU nor Simonson has demonstrated that, based on the Ordinance, ACLU members suffered an "injury in fact" or the imminent threat of an injury in fact. Thus, Plaintiffs would not have standing to sue in their own right, the first requirement for organizational standing. Accordingly, Plaintiffs have not established

that they have met the criteria necessary for organizational standing.

{13} Plaintiffs argue that they have standing because all Albuquerque drivers are threatened by this ordinance, and Simonson is an Albuquerque driver. However, we note that such an argument, which essentially goes to the second prong of the test outlined in *Forest Guardians,* 2001–NMCA–028, ¶ 21, 130 N.M. 368, 24 P.3d 803, was rejected as insufficient in *Sierra Club v. Morton,* 405 U.S. 727, 735, 738–40, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). In *Sierra Club,* the Sierra Club alleged in its complaint that it had an organizational "interest in the conservation and the sound maintenance of the national parks, game refuges and forests of the country" as a basis for standing. *Id.* at 735 n. 8, 92 S.Ct. 1361. However, the Court concluded that an organizational interest was insufficient to confer standing, and instead the members of the organization must be injured or threatened with injury in order for the organization to assert standing. *Id.* at 738–40, 92 S.Ct. 1361. The Court reasoned that "if a 'special interest' in this subject were enough to entitle the Sierra Club to commence this litigation, there would appear to be no objective basis upon which to disallow suit by an other bona fide 'special interest' organization." *Id.* at 739, 92 S.Ct. 1361. Thus, we reject the argument that the ACLU's interest in protecting the civil liberties of the drivers of Albuquerque, a group to which some members of the ACLU belong, is sufficient to confer standing. If this interest were enough to confer standing, then the ACLU, and, for that matter, any organization asserting that its purpose was to protect constitutional rights, could assert standing based on any number of threats to civil liberties, be they based on due process, overbreadth of a statute, etc., without ever having to show that a member of the organization would have standing to sue in his or her own individual right. We decline to reach such a result. *See Forest Guardians,* 2001–NMCA–028, ¶ 21, 130 N.M. 368, 24 P.3d 803.

## D. Facial Constitutional Challenge

{14} Plaintiffs begin by claiming that the Ordinance is overbroad. As argued by Plaintiffs, the Ordinance is overbroad be-

cause it permits seizure and permanent forfeiture of a vehicle upon first arrest for DWI, even though a driver arrested for DWI may, in fact, not be guilty of DWI, and may have been engaging in completely legal activity when arrested. We point out that the general rule on standing prohibits an overbreadth challenge in situations where a litigant, "to whom a statute may be constitutionally applied," is attempting to make a challenge on the ground that the statute or ordinance "may conceivably be applied unconstitutionally to others not before the court." *State v. James M.*, 111 N.M. 473, 478, 806 P.2d 1063, 1068 (Ct.App.1990); *see also In re Candice Y.*, 2000–NMCA–035, ¶ 18, 128 N.M. 813, 999 P.2d 1045 (stating that an overbreadth challenge can be made only when a statute affects First Amendment rights); *Bustamante v. C De Baca*, 119 N.M. 739, 743, 895 P.2d 261, 265 (Ct.App.1995). An overbreadth challenge is permitted, however, when First Amendment rights to freedom of speech and association are implicated. *James M.*, 111 N.M. at 478, 806 P.2d at 1068. First Amendment rights are not implicated by the Ordinance in this case. Therefore, Plaintiffs have no standing to bring a claim that the Ordinance is overbroad.

{15} To the extent that Plaintiffs are raising a facial challenge that does not involve overbreadth, as noted in *Forest Guardians*, "the constitutionality of a statute is not in itself a cause of action, nor a head of equity jurisdiction." 2001–NMCA–028, ¶ 15, 130 N.M. 368, 24 P.3d 803 (internal quotation marks, citation, and alteration omitted). In order to advance a facial challenge, Plaintiffs are required to meet the traditional requirements for standing. *Id.* As discussed above, Plaintiffs have failed to demonstrate that they have suffered an injury in fact or experienced the imminent threat of an injury. Therefore, Plaintiffs have not met the standing requirements needed to mount a facial challenge to the Ordinance.

{16} Plaintiffs point to the case of *ACLU v. City of Albuquerque*, 1999–NMSC–044, 128 N.M. 315, 992 P.2d 866, to support their claim that they can bring a facial challenge without having to show that they have, in fact, been injured by the Ordinance. In that case, the Supreme Court held that the City could not enact a curfew ordinance that prohibited children from remaining on public streets during stated curfew hours when that behavior was not unlawful if committed by adults. *Id.* ¶ 30. Prior to the enactment of the curfew ordinance, it was lawful for children to be on public streets without a time restriction. *Id.* ¶ 15. After enactment of the curfew ordinance, any child under seventeen years of age was subject to arrest and being taken into custody for engaging in an activity that was previously lawful and remained lawful for adults. *Id.* In striking down the ordinance, the Supreme Court recognized that a plaintiff need not be arrested or prosecuted before challenging the constitutionality of a statute when "the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Id.* ¶ 9.

{17} In this case, Plaintiffs have alleged an intention to engage in driving on the streets of Albuquerque, with the possibility of driving after drinking an amount of alcohol that does not raise their blood alcohol levels above the legal limit. This conduct is not "arguably affected with a constitutional interest," as driving is a privilege, and not a right. *Id.*; *cf. In re Suazo*, 117 N.M. 785, 794, 877 P.2d 1088, 1097 (1994) (Baca, J., specially concurring) (discussing that a motorist could "cure" an initial refusal to take a sobriety test). In addition, driving on the streets of Albuquerque, even after drinking an amount of alcohol that does not raise blood alcohol levels above the legal limit, is not proscribed by the Ordinance; instead, what is proscribed is the illegal activity of driving under the influence of alcohol. Finally, if a person engages in the legal conduct of driving, as described above, there is no credible threat that the person will be prosecuted for that conduct; there is merely the hypothetical possibility that the person will be wrongly arrested for DWI. Clearly, the situation in this case is very different from that in *ACLU*.

{18} The *ACLU* case falls into a narrow exception to the standing rule. This exception, like the overbreadth exception in the

First Amendment context, may allow a facial challenge to a law that chills legal activity that is constitutionally protected. As discussed above, that is not the situation in this case. Therefore, Plaintiffs may not maintain their facial challenge to the Ordinance.

### E. Important Public Interest

{19} Plaintiffs argued to the trial court that standing could be conferred on them based on the rule allowing the discretionary grant of standing to private parties "to vindicate the public interest in cases presenting issues of great public importance," even though that party may not normally have standing. *State ex rel. Clark v. Johnson,* 120 N.M. 562, 568–69, 574, 904 P.2d 11, 17–18 (1995). Specifically, Plaintiffs argued that, by passing the Ordinance, the City unlawfully delegated "quasi-judicial" power to the police department, thereby "usurping the legislative power" of the City Council. Plaintiffs also allege that the Ordinance "treads upon the traditional role of the judiciary . . . by re-writing criminal law into nuisance abatement law" and "imposing punishment upon without a determination of guilt." According to Plaintiffs, the "public interest" in this case is "that of the citizens of Albuquerque and the nature of city government as sovereign, authorized by the home rule provisions" of our state Constitution.

{20} The public importance doctrine is limited to cases involving "clear threats to the essential nature of state government guaranteed to New Mexico citizens under their Constitution—a government in which the 'three distinct departments, . . . legislative, executive, and judicial,' remain within the bounds of their constitutional powers." *State ex rel. Coll v. Johnson,* 1999–NMSC–036, ¶ 21, 128 N.M. 154, 990 P.2d 1277 (citation omitted) (alteration in original). It is not sufficient that a case "involves a duty that state officials owe to the general public as a whole." *Forest Guardians,* 2001–NMCA–028, ¶ 35, 130 N.M. 368, 24 P.3d 803 (internal quotation marks and citation omitted). Where there is nothing to indicate that the conduct proscribed by the Ordinance "threatens the integrity of state government or the state's definition of itself as sover-

eign," Plaintiffs will not be allowed to rely on the public importance doctrine. *Id.* (internal quotation marks and citation omitted). This case involves nothing more than a potential violation of certain specific citizens' due process rights, and therefore does not rise to the level of a clear threat to the essential nature of government.

## CONCLUSION

{21} Courts generally avoid reaching out to decide issues before there has been an actual injury to a specific person. The Ordinance in this case does not restrict any constitutional activity, and does not involve a clear threat to the essential nature of government. We recognize that there appear to be problems with the manner in which the Ordinance is drafted, particularly the portions of the Ordinance concerning seizure, forfeiture, and probable cause. However, there is no reason to dispense with the usual standing requirements in this case. It is preferable instead to wait for a case with a specific plaintiff who complains of actually being injured by the Ordinance. *Cf. Sabri v. United States,* 541 U.S. 600, 609, 124 S.Ct. 1941, 158 L.Ed.2d 891 (2004) (explaining that it is more desirable to decide the constitutionality of a law when that decision is not based on a fact-poor record).

{22} For the reasons discussed in this opinion, we reverse the decision of the trial court, and we dissolve the permanent injunction.

{23} **IT IS SO ORDERED.**

WE CONCUR: JONATHAN B. SUTIN, Chief Judge, and IRA ROBINSON, Judge.