2008-NMSC-045

188 P.3d 1222

### AMERICAN CIVIL LIBERTIES UNION OF NEW MEXICO and Peter G. Simonson, Plaintiffs–Petitioners,

v.

### CITY OF ALBUQUERQUE, Defendant–Respondent.

No. 30,415.

Supreme Court of New Mexico.

June 27, 2008.

*gular Wireless, LLC*, 223 Ill.2d 1, 306 Ill.Dec. 157, 857 N.E.2d 250, 274–75 (2006).

Kennedy & Han, P.C., Paul J. Kennedy, Sanders & Westbrook, P.C., Maureen A. Sanders, ACLU of New Mexico, George L. Bach, Jr., The Revo Law Firm, P.A., Roger I. Smith, Ousama M. Rasheed Law Office, Ousama M. Rasheed, Albuquerque, NM, for Petitioners.

Office of the City Attorney, Robert M. White, Peter H. Pierotti, Albuquerque, NM, for Respondent.

## OPINION

BOSSON, Justice.

{1} This appeal raises questions as to the continued viability of New Mexico's enduring justiciability principles that govern who has standing to bring suit in our state courts. Our current standing doctrine generally requires litigants to allege three elements: (1) they are directly injured as a result of the action they seek to challenge; (2) there is a causal relationship between the injury and the challenged conduct; and (3) the injury is likely to be redressed by a favorable decision. These requirements are known in short form as injury in fact, causation, and redressability, and are derived from federal standing jurisprudence.

{2} Plaintiffs seek to mount a pre-enforcement constitutional challenge to an ordinance passed by the City of Albuquerque, and they ask this Court to perform a comprehensive overhaul of New Mexico standing jurisprudence for them to do so. Specifically, Plaintiffs encourage us to abandon the traditional three federally-derived elements and instead implement an approach whereby courts would evaluate four "prudential factors" to determine whether a litigant has standing to sue. We do not find occasion in this case to depart from our traditional standing analysis, and therefore we affirm the Court of Appeals' decision holding that Plaintiffs lack standing to challenge the City's ordinance.

## BACKGROUND

{3} The ACLU and two named Plaintiffs filed a complaint for declaratory and injunc-

tive relief challenging the constitutionality of the City's Ordinance Bill No. O–05–113, which amended the City's ordinance providing for civil forfeiture of vehicles driven by individuals with multiple previous DWI arrests or convictions. This Court upheld the constitutionality of the previous version of the Ordinance in *City of Albuquerque ex rel. Albuquerque Police Dep't v. One (1) 1984 Chevy Ut.*, 2002–NMSC–014, 132 N.M. 187, 46 P.3d 94. The challenged amendments provide for civil forfeiture of vehicles driven by individuals who have been arrested for DWI with *no previous* offenses. The Plaintiffs filed their complaint on the same day the challenged amendments became effective and obtained an injunction; thus, the City has never enforced the Ordinance as amended.

{4} The amended Ordinance declares that a vehicle "[o]perated by a person who has been arrested for an offense of driving under the influence of intoxicating liquor or drugs" is a nuisance and subjects such a vehicle to "temporary seizure or permanent forfeiture." Albuquerque, N.M., Ordinance § 7–6–2 and – 4 (16th Council). The owner of a seized vehicle may request an administrative hearing at which a city hearing officer "shall only determine whether the law enforcement officer had probable cause to seize the vehicle." Section 7–6–5(D)(8). If the hearing officer determines that there was probable cause to seize the vehicle, "proceedings for an order for forfeiture shall be instituted promptly." *Id.*

{5} The City filed several motions, including a motion to dismiss for lack of standing, and Plaintiffs filed a motion for permanent injunction. The district court denied the City's motion to dismiss and granted Plaintiffs' motion for permanent injunction, finding that the Ordinance provides insufficient procedural due process. Specifically, the court found that the Ordinance is constitutionally defective because it states that the only determination to be made at the administrative hearing is "whether the law enforcement officer had probable cause *to seize the vehicle*," as opposed to whether there was probable cause *for the arrest*. The City appealed the district court's decision, and the Court of Appeals reversed, finding that

Plaintiffs lacked standing to challenge the ordinance. *See ACLU v. City of Albuquerque (ACLU II)*, 2007–NMCA–092, 142 N.M. 259, 164 P.3d 958. We granted certiorari to clarify the law of standing as it applies in this case. We agree with the Court of Appeals that Plaintiffs lack standing, and we therefore affirm.

## DISCUSSION

{6} At the inception of the case, there were three Plaintiffs, the ACLU and two individuals. One of the individual plaintiffs was dismissed by stipulation, leaving Peter Simonson, the executive director and a member of the ACLU, as the remaining named Plaintiff. In the complaint, Simonson alleged that his "rights, status or other legal relations are affected by [the Ordinance]." The ACLU alleged that it had "standing to vindicate the public interest in matters of great public . . . importance," and to "vindicate the interest of its members who will be subject to [the Ordinance], and whose rights, status or other legal relations are affected by [the Ordinance]." Whether Plaintiffs have standing to challenge the Ordinance is a matter of law subject to de novo review. *See Forest Guardians v. Powell*, 2001–NMCA–028, ¶ 5, 130 N.M. 368, 24 P.3d 803.

### The Law of Standing

{7} The Court of Appeals began its standing analysis by stating: "Under our Constitution, in order to have standing, a plaintiff must establish that there is (1) an injury in fact, (2) a causal relationship between the injury and the challenged conduct, and (3) a likelihood that the injury will be redressed by a favorable decision." *ACLU II*, 2007–NMCA–092, ¶ 7, 142 N.M. 259, 164 P.3d 958 (quoted authority omitted). Plaintiffs take issue with this statement, arguing that the Court of Appeals incorrectly characterized standing as a constitutional requirement. According to Plaintiffs, while standing in federal court is a jurisdictional threshold set by Article III of the United States Constitution, limiting the subject matter jurisdiction of federal courts to "cases and controversies," standing in state court is an entirely different matter. Under the New Mexico Constitution, state courts are courts of general ju-

risdiction, and our constitution contains no analogue to the federal "cases and controversies" language. *See John Does I through III v. Roman Catholic Church*, 1996–NMCA–094, ¶ 26, 122 N.M. 307, 924 P.2d 273. Thus, Plaintiffs claim that standing in state court is a prudential matter rather than a jurisdictional requirement dictated by our constitution.

{8} Based on the proposition that standing in state court is a prudential matter, Plaintiffs argue for a fundamental revision of our law of standing. They advocate an abandonment of the three federally-derived traditional standing requirements—injury in fact, causation, and redressability—which are borrowed to a large degree from federal standing jurisprudence. In place of those requirements, Plaintiffs would have us adopt four "prudential factors," drawn from prior New Mexico appellate decisions on standing. These factors are: (1) the degree of potential harm to the plaintiff and the seriousness of the constitutional or legal challenge; (2) the public importance of the issue; (3) the extent to which the plaintiff can bring to bear the concrete adverseness that will sharpen the issue for the court; and (4) with respect to organizational plaintiffs, the degree of difficulty in obtaining individual plaintiffs to step forward on an issue of public importance. According to Plaintiffs, our state courts should evaluate and weigh these factors in deciding whether a plaintiff has standing to sue in a given case.

■■■ {9} We agree with Plaintiffs that standing in our courts is not derived from the state constitution, and is not jurisdictional.[1] As we recognized in *New Mexico Right to Choose/NARAL v. Johnson*, 1999–NMSC–005, ¶ 12, 126 N.M. 788, 975 P.2d 841, "New Mexico state courts are not subject to the jurisdictional limitations imposed on federal courts by Article III, Section 2 of the United States Constitution." Indeed, this Court has exercised its discretion to confer standing and reach the merits in cases where the traditional standing requirements were not met due to the public importance of the issues involved. *See Baca v. N.M. Dep't of Pub. Safety*, 2002–NMSC–017, ¶ 4, 132 N.M. 282, 47 P.3d 441 (stating that the validity of the Concealed Handgun Carry Act raised a constitutional question of great public importance, and electing to confer standing on that basis); *State ex rel. Sego v. Kirkpatrick*, 86 N.M. 359, 363, 524 P.2d 975, 979 (1974) (constitutionality of partial vetoes by the Governor was a matter of substantial public interest); *John Does I through III*, 1996–NMCA–094, ¶ 27, 122 N.M. 307, 924 P.2d 273 (noting that because the absence of standing in such cases did not deprive this Court of jurisdiction to decide the matter, the denial of standing could not have been based on constitutional limitations on the court's power). Thus, the Court of Appeals' suggestion that standing is constitutionally based, though perhaps grounded in similar statements from past cases, misapprehends the true nature of standing in state court as compared to federal court.[2] *See generally* Helen Herschkoff, *State Courts and the "Passive Virtues": Rethinking the Judicial Function*, 114 Harv. L.Rev. 1833 (2001) (discussing the difference between standing in state courts and federal courts).

---

1. We do note, however, that standing may be a jurisdictional matter when a litigant asserts a cause of action created by statute. As the Pennsylvania Superior Court explained: "When a statute creates a cause of action and designates who may sue, the issue of standing becomes interwoven with that of subject matter jurisdiction. Standing then becomes a jurisdictional prerequisite to an action." *In re Adoption of W.C.K.*, 748 A.2d 223, 228 (Pa.Super.Ct.2000) (quoted authority omitted).

2. We acknowledge the oft-quoted statement that "[t]he requirements for standing derive from constitutional provisions, enacted statutes and rules, and prudential considerations." *John Does I through III*, 1996–NMCA–094, ¶ 25, 122 N.M. 307, 924 P.2d 273 (citing *United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 116 S.Ct. 1529, 134 L.Ed.2d 758 (1996)); *see also N.M. Right to Choose/NARAL*, 1999–NMSC–005, ¶ 13, 126 N.M. 788, 975 P.2d 841 (citing *John Does I through III* for same proposition); *Forest Guardians*, 2001–NMCA–028, ¶ 16, 130 N.M. 368, 24 P.3d 803 (same). However, this statement is adopted from federal law and should not be taken to mean that standing to sue in state court is rooted in the New Mexico Constitution, unless it relates to standing under a particular constitutional provision.

{10} While we recognize that standing in our state courts does not have the constitutional dimensions that are present in federal court, New Mexico's standing jurisprudence indicates that our state courts have long been guided by the traditional federal standing analysis. For example, as far back as the early part of the twentieth century, in cases addressing the standing of taxpayers to challenge expenditure of government funds, this Court has required allegations of direct injury to the complaining party for that party to properly seek an injunction or challenge the constitutionality of legislative acts. Indeed, this Court noted in *Asplund v. Hannett*:

> "Injunction is not a remedy which may be invoked by the citizen for the purpose of controlling public officers or tribunals in the exercise of their functions. In order to sustain it, the plaintiff must show that he has a special interest, in respect to which he will suffer special injury. It is not enough that the community in which he resides will be injuriously affected by some governmental or legislative action."

31 N.M. 641, 656, 249 P. 1074, 1079 (1926) (quoting Story's Eq. Jur. (14th ed.) § 14); *see also Eastham v. Pub. Employees Ret. Ass'n Bd.*, 89 N.M. 399, 404–06, 553 P.2d 679, 684–86 (1976) (plaintiffs who brought action for declaration that Legislative Retirement Act was unconstitutional and for issuance of injunction against payment of annuities under that Act did not have standing, as *potential* retirees under the program or as citizens and taxpayers, to bring the action); *State ex rel. Overton v. N.M. State Tax Comm'n*, 81 N.M. 28, 31, 462 P.2d 613, 616 (1969) (noting that "there must be a real and not a theoretical question, and the party raising it must have a real interest in the question before a declaratory judgment action will lie"). Thus, at least as a matter of judicial policy if not of jurisdictional necessity, our courts have generally required that a litigant demonstrate injury in fact, causation, and redressability to invoke the court's authority to decide the merits of a case.

**Injury in Fact**

{11} Of most significance in the instant case is the injury in fact requirement. Injury in fact has evolved in New Mexico jurisprudence in response to developments in federal law that created a more flexible standard, departing from older, more formalistic notions of a "legally protected interest." *See De Vargas Sav. & Loan Ass'n v. Campbell*, 87 N.M. 469, 471, 535 P.2d 1320, 1323 (1975) (noting that "[t]he flaw in the 'legal interest' test is that it requires a court to examine the merits of a case, while the purpose of the standing question is quite distinct—to protect against improper plaintiffs"). In *De Vargas*, this Court established the contours of the modern injury in fact standard that has since guided New Mexico courts. We noted that, though "New Mexico has always required allegations of direct injury to the complainant to confer standing, ... once the party seeking review alleges he himself is among the injured, the extent of injury can be very slight." *Id.* at 472, 535 P.2d at 1323. Moreover, we have held that a litigant need not suffer the actual effects of the challenged action or statute, such as arrest and prosecution under a criminal statute, to meet the injury in fact requirement. *See ACLU v. City of Albuquerque (ACLU I)*, 1999–NMSC–044, ¶ 9, 128 N.M. 315, 992 P.2d 866. Rather, the litigant need only show that he is "imminently threatened with injury," *De Vargas*, 87 N.M. at 473, 535 P.2d at 1324, or, put another way, that he is faced with "a real risk of future injury," as a result of the challenged action or statute. *Corn v. N.M. Educators Fed. Credit Union*, 119 N.M. 199, 202, 889 P.2d 234, 237 (Ct.App.1995), *overruled on other grounds by Trujillo v. City of Albuquerque*, 1998–NMSC–031, 125 N.M. 721, 965 P.2d 305.

{12} Further, like federal law, our courts have allowed organizations to sue if their individual members would have standing in their own right. *See, e.g., Nat'l Trust for Historic Pres. v. City of Albuquerque*, 117 N.M. 590, 594, 874 P.2d 798, 802 (Ct.App. 1994). We have also held that a litigant may bring an action on behalf of a third party if the litigant demonstrates the following three criteria: (1) the litigant has "suffered an 'injury in fact,' thus giving him or her a 'sufficiently concrete interest' in the outcome of the issue in dispute;" (2) the litigant has "a close relation to the third party;" and (3).

there exists "some hindrance to the third party's ability to protect his or her interests." *N.M. Right to Choose/NARAL,* 1999–NMSC–005, ¶ 13, 126 N.M. 788, 975 P.2d 841 (*quoting Powers v. Ohio,* 499 U.S. 400, 411, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991)). As discussed previously, the great public importance doctrine exists as an overarching exception to all of these general standing requirements, allowing this Court to reach the merits of a case even when the traditional criteria for standing are not met, either by an individual or an organizational plaintiff.

{13} Plaintiffs' suggested "prudential factors" are an amalgamation of the above principles, with the notable absence of the three traditional, federally-derived standing requirements that form the jurisdictional threshold in federal courts. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (stating that U.S. Supreme Court precedent establishes the injury in fact, causation, and redressability elements as "the irreducible constitutional minimum of standing"). Plaintiffs argue that those three elements "have been roundly criticized by the commentators in ways that should give this Court pause over the wisdom of their wholesale adoption as state prudential standards." As to the injury in fact element, Plaintiffs state that it is "a singularly unhelpful, even incoherent, addition to the law of standing," but do not offer an explanation as to why that is so. With regard to the causation component, Plaintiffs assert that it is "much too closely tied to the merits, and fosters the criticism that federal standing is not principled, but just a way of pre-judging the merits while avoiding the merits." Finally, regarding the redressability element, Plaintiffs maintain that the difficulty in explaining the difference between causation and redressability "seems to confound even the Supreme Court."

{14} While we acknowledge the criticisms of the causation and redressability components, we are mainly concerned here with the injury in fact requirement, as that is the point upon which this case turns when the

traditional three-prong test is applied.[3] Indeed, Plaintiffs implicitly recognize this by making the elimination of the injury in fact element the focal point of their suggested approach. In place of the requirement that a litigant show a direct injury that is actual or imminent, Plaintiffs would substitute an inquiry into the degree or magnitude of the potential harm to an individual if an injury were to occur—the challenged ordinance were to be enforced unconstitutionally—and the seriousness of the constitutional issues involved.

{15} In support of their contention that courts should look to the magnitude of potential harm instead of the threat of injury to a particular plaintiff, Plaintiffs cite to two New Mexico cases in which they assert the court found standing based on the seriousness of the potential injury. In *De Vargas,* the state supervisor of the banking department granted authority to a Los Alamos building and loan association to operate an office in Santa Fe. 87 N.M. at 470, 535 P.2d at 1321. Several Santa Fe savings and loan associations challenged the supervisor's decision, claiming that they would suffer "undue competitive injury" if another office was allowed to operate in Santa Fe. *Id.* at 470, 473, 535 P.2d at 1321, 1324. This Court found that the alleged injuries were sufficient for the Santa Fe savings and loan associations to attain standing as associations "aggrieved and directly affected" by the banking department's order. *Id.* at 473, 535 P.2d at 1324.

{16} In *Corn,* a workers compensation claimant challenged the attorneys' fees cap in the Workers Compensation Act, claiming that it violated the equal protection clause. 119 N.M. at 201, 889 P.2d at 236. The defendant claimed that the worker could not demonstrate a direct threat of injury from the application of the attorneys' fees cap to her case because she was still represented by counsel. *Id.* at 202, 889 P.2d at 237. The Court of Appeals disagreed, finding that the case was seriously contested and of above-average complexity, and thus, the worker could have been "required to pursue matters

---

3. We remain open to suggestions regarding changes to the second and third prongs of the traditional standing test. However, we focus solely on the injury in fact element here, without discussing the remaining elements.

of impairment and permanent disability without the aid of counsel because the cap prohibits her from compensating counsel any further." *Id.* The court refused to take a rigid approach to the concept of standing by requiring that the worker "actually proceed without counsel, and suffer prejudice as a result, before she can raise a constitutional challenge to the attorneys' fees cap." *Id.* Thus, the court held that the worker had sufficiently demonstrated a "real risk of future injury due to the attorneys' fees cap" to comply with the injury in fact requirement for standing. *Id.*

{17} Plaintiffs claim that at the core of the holdings in *De Vargas* and *Corn* was the court's consideration that the potential injury could be very serious. In other words, if the potential harm is of sufficient magnitude, then the threat of such harm to some unknown person will be sufficient to confer standing without requiring a direct injury, either actual or imminent, to a particular plaintiff. With respect, we think Plaintiffs misread these opinions.

{18} Both *De Vargas* and *Corn* explicitly focused on the direct nature of the threat of harm to the particular plaintiff, not the magnitude of that harm. Indeed, both courts expressly recognized that, once the plaintiff has alleged that he is among those who are directly injured or imminently threatened with injury, the alleged injury itself need only be slight. *De Vargas,* 87 N.M. at 472, 535 P.2d at 1323; *Corn,* 119 N.M. at 202, 889 P.2d at 237. In asserting that *De Vargas* and *Corn* support an injury in fact standard that evaluates the magnitude of potential injury rather than the direct nature of the threat to the particular plaintiff, Plaintiffs overlook the fact that the threat of harm in those cases was real and significant and was directly traceable to the individual plaintiffs that were bringing suit; it was not a general, undifferentiated threat of a hypothetical harm to some unidentifiable person. Thus, we do not find support in these cases for Plaintiffs' position that the injury in fact element should not remain part of our standing analysis.

{19} Though we recognize there may be difficulties with the injury in fact require-

ment in certain cases, we decline Plaintiffs' invitation to do away with that element as part of our general approach to standing, particularly as applied in the instant case. Requiring that the party bringing suit show that he is injured or threatened with injury in a direct and concrete way serves well-established goals of sound judicial policy. *See Wis. Bankers Ass'n v. Mut. Sav. & Loan Ass'n,* 96 Wis.2d 438, 291 N.W.2d 869, 875 n. 1 (1980) (noting that "Wisconsin courts generally require that a plaintiff possess standing not as a jurisdictional prerequisite but rather as a matter of sound judicial policy"). As Justice Kennedy explained in his concurrence in *Lujan:*

> While it does not matter how many persons have been injured by the challenged action, the party bringing suit must show that the action injures him in a concrete and personal way. This requirement is not just an empty formality. It preserves the vitality of the adversarial process by assuring both that the parties before the court have an actual, as opposed to a professed, stake in the outcome, and that the legal questions presented ... will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action.

504 U.S. at 581, 112 S.Ct. 2130 (quoted authority omitted). By establishing injury in fact as part of a general approach to standing, our state court justiciability policies serve "[t]he values of avoiding unnecessary constitutional determinations and establishing proper relationships between the judiciary and other branches of the ... government." 13A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3532.1, at 120 (2d ed. 1984) (quoted authority omitted).

{20} Beyond the strength of the policies underlying the three-prong approach to standing, and particularly the injury in fact requirement, that approach is deeply ingrained in New Mexico jurisprudence. To abandon a test that has essentially formed the basis of New Mexico's entire body of case law on standing, a body of law that has extensive historical roots, would require a

highly compelling reason for doing so. Plaintiffs simply do not supply us with such a reason. That the federal approach is grounded in Article III constraints which do not apply to our state courts is not enough to persuade us to change course. Nor do Plaintiffs adequately explain how their suggested prudential factors can be applied in any principled way by lower courts to avoid eviscerating the standing requirement.

{21} Plaintiffs' approach seems to exchange a rule-based system that, though perhaps subject to criticism, at least contains standards with identifiable contours and boundaries, for an impulse-based, visceral type of evaluation. Thus, if lower courts were directed to evaluate the seriousness of the potential harm, which Plaintiffs essentially define as any constitutional harm, and the public importance of the issue to determine standing, it is difficult to see how the ultimate determination would not be merely a reflection of the whim of the particular judge. Without a more concrete explanation of how Plaintiffs' proposed factors provide meaningful and predictable guidelines for determining whether a particular plaintiff has standing to sue, we will not deviate from New Mexico's time-honored approach which overall has served us well.

{22} To clarify, we do not reject outright Plaintiffs' prudential factors. As noted previously, each of those factors is already incorporated in some fashion into our current approach to standing, and are helpful points for guidance and analysis. We only reject those factors as surrogates for injury in fact. Because we do not adopt Plaintiffs' proposed prudential factors for determining standing, and instead elect to maintain the basic legal framework set out in our prior standing case law, we now apply that framework to the current case.

### Under Our Traditional Standing Jurisprudence, Plaintiffs do not Have Standing to Bring Their Claim

{23} As we have said, under a traditional standing analysis, this case turns on the first of the three elements—injury in fact. Plaintiffs claim that "the instant Ordinance places everyone who drives within the city limits of Albuquerque, including [Simonson] and other members of ACLU–NM, in imminent harm because it punishes based on *arrest*, not upon a finding of guilt." According to Plaintiffs, the injury that would confer standing in this case consists of Simonson, or another ACLU member, having to drive under the fear that he will be erroneously arrested for DWI, which will trigger a chain reaction that results in forfeiture of his vehicle. "Plaintiffs argue that, since it is not illegal to drive a vehicle or to drink before driving a vehicle, so long as the driver's blood alcohol concentration is within statutory limits, the Ordinance potentially subjects drivers who drink, but are not intoxicated under our laws, to the threat of forfeiture of the vehicle that they are driving." *ACLU II*, 2007–NMCA–092, ¶ 9, 142 N.M. 259, 164 P.3d 958.

{24} We agree with the Court of Appeals that this asserted injury is simply too speculative with respect to Simonson or any individual driver who is an ACLU member to meet the injury in fact standard. As noted by the Court of Appeals, Simonson's vehicle could only be forfeited in the manner alleged if the following contingencies were to take place: "(1) he drinks an amount of alcohol that does not raise his blood alcohol concentration above statutory limits, (2) he is stopped by police and arrested for driving while intoxicated, (3) he has his vehicle seized, (4) he requests a hearing as provided by Section 7–6–5 of the Ordinance, (5) the hearing officer finds that police did have probable cause to seize the vehicle, and (6) the City is successful in obtaining an order of forfeiture from the district court." *Id.* Plaintiffs cannot even demonstrate that the triggering event for application of the Ordinance—an arrest for driving while intoxicated—is imminent or likely with respect to Simonson or any individual ACLU member.

{25} While we acknowledge that perhaps the other contingencies need not necessarily take place for a driver to attain standing to challenge the Ordinance on constitutional grounds, at the very least a plaintiff must be able to demonstrate a high probability of arrest for his own actions. It may be true that demonstrating such a high probability of

arrest of an individual driver is impossible without clairvoyant capacities, but we do not see how that fact would militate in favor of not requiring an injury in fact. Rather, we think that the impossibility of discerning any individual to whom this Ordinance might be applied prior to the City actually enforcing the Ordinance is precisely why this Ordinance is not suited to a pre-enforcement challenge.

{26} Analogizing this case to *ACLU I*, Plaintiffs argue that they did not need to wait until the Ordinance was enforced and they were actually injured to challenge the constitutionality of the Ordinance. In *ACLU I*, a group of teenagers, their parents, and a business owner, along with the ACLU, brought suit against the City of Albuquerque challenging the constitutionality of the City's juvenile curfew ordinance along with the program implemented to enforce that ordinance. 1999–NMSC–044, ¶¶ 1, 6, 128 N.M. 315, 992 P.2d 866. The City argued that the teenagers lacked standing to challenge the ordinance and the enforcement scheme because none of them had been arrested or charged during the program. *Id.* ¶ 8. In holding that the teens did not need to await arrest and prosecution before they could seek relief, this Court quoted from the United States Supreme Court opinion in *Babbitt v. United Farm Workers National Union*, 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979), which held as follows:

> When contesting the constitutionality of a criminal statute, it is not necessary that [the plaintiff] first expose himself [or herself] to actual arrest or prosecution to be entitled to challenge [the] statute that he [or she] claims deters the exercise of his [or her] constitutional rights. When the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he [or she] should not be required to await and undergo a criminal prosecution as the sole means of seeking relief.

*ACLU I*, 1999–NMSC–044, ¶ 9, 128 N.M. 315, 992 P.2d 866. In *ACLU I*, we agreed with the plaintiffs that the ordinance "curtail[ed] their previously legitimate late night activities." *Id.* Further, we noted that "the [enforcement] program demonstrate[d] the City's intention to apprehend individuals in violation of the [curfew ordinance]," thus showing a credible threat of prosecution if plaintiffs engaged in those previously legitimate activities. *Id.*

{27} We do not find *ACLU I* persuasive in our analysis of standing in the instant case. Unlike the curfew ordinance, it is difficult to see how the Ordinance in this case proscribes a course of conduct "arguably affected with a constitutional interest." The Ordinance dictates a consequence resulting from a DWI arrest; it does not make illegal any particular course of conduct that was previously permitted. Thus, the Ordinance in this case is very difficult to analogize to the curfew ordinance in *ACLU I* in terms of establishing a credible threat of prosecution, or a "real risk" of injury.

{28} The plaintiffs in *ACLU I* could demonstrate that they themselves were highly likely to be arrested for violating the curfew if they stayed out past the time specified in the ordinance, simply by virtue of the fact that they were of a certain age and because the City had demonstrated its intent to apprehend individuals in violation of the curfew. This credible threat of prosecution, and the consequent chilling effect on constitutionally protected activities such as freedom of assembly and the liberty to move about freely, was therefore sufficient to establish an imminent injury or a real risk of injury for the particular plaintiffs. In this way, *ACLU I* is similar to cases allowing pre-enforcement overbreadth challenges to statutes that affect First Amendment rights due to the chilling effect on freedom of expression. *See, e.g., State v. James M.*, 111 N.M. 473, 478, 806 P.2d 1063, 1068 (Ct.App.1990). Further, the object of the curfew ordinance—teenagers—made it particularly appropriate to allow suit before an actual encounter with the law took place.

{29} In the instant case, Plaintiffs cannot show a high likelihood that Simonson or any individual ACLU member will even be arrested for DWI, let alone wrongly arrested for DWI, and therefore exposed to the ulti-

mate threat of having their vehicle forfeited under the Ordinance. As the Court of Appeals observed, "if a person engages in the legal conduct of driving ... there is no credible threat that the person will be prosecuted for that conduct; there is merely the hypothetical possibility that the person will be wrongly arrested for DWI." *ACLU II*, 2007–NMCA–092, ¶ 17, 142 N.M. 259, 164 P.3d 958. Such a "hypothetical possibility" of injury will not suffice to establish the threat of direct injury required for standing.

### Organizational Standing

{30} An organization's standing to sue is premised on the standing of its individual members. Thus, "an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Forest Guardians*, 2001–NMCA–028, ¶ 21, 130 N.M. 368, 24 P.3d 803 (quoted authority omitted). As we discussed in the previous section, the ACLU cannot satisfy the first component of this test. Because Plaintiffs have not established that any ACLU member faces an imminent threat of having her vehicle forfeited pursuant to a wrongful DWI arrest, the ACLU cannot assert standing in its organizational capacity.

{31} Plaintiffs appear to make a separate argument for third-party standing by claiming that this case is one where "very important interests are at stake and those parties directly affected are unlikely or unable to assert those important interests." As we noted previously, a litigant may assert the rights of third parties if she can show that: (1) the litigant herself has "suffered an injury in fact, thus giving ... her a sufficiently concrete interest in the outcome of the issue in dispute;" (2) the litigant has "a close relation to the third party;" and (3) there exists "some hindrance to the third party's ability to protect his or her own interests." *N.M. Right to Choose/NARAL*, 1999–NMSC–005, ¶ 13, 126 N.M. 788, 975 P.2d 841 (quoted

authority omitted). Plaintiffs focus on the third prong, asserting that the stigma associated with an arrest for DWI discourages potential plaintiffs from coming forward to allege that they intend to drink, even to a measured degree, then drive the streets of Albuquerque in order to establish the kind of threatened injury needed for standing. However, the test for third-party standing still requires that the litigant demonstrate an injury in fact, even if it be a different type of injury than that which the third party would suffer from the challenged conduct. *See id.* ¶ 14 (holding that providers of abortion services to Medicaid-eligible women had "both a direct financial interest in obtaining state funding to reimburse them for the cost of [those] services, and a close relation to the Medicaid-eligible women whose rights they [sought] to assert in court." (citations omitted)). As we have discussed at length, Plaintiffs have not been able to show such an injury in this case.

{32} Further, regardless of the absence of an injury in fact, there is no indication that any person against whom the City enforces the Ordinance will be hindered from challenging the Ordinance. *Cf. id.* (noting that "privacy concerns and time constraints impose a significant hindrance on the ability of Medicaid-eligible women to protect their own interest in obtaining medically necessary abortions"). In fact, any person threatened with having a vehicle seized or forfeited for a DWI arrest will likely be highly motivated to bring such a challenge. *See, e.g., One (1) 1984 White Chevy Ut.*, 2002–NMSC–014, 132 N.M. 187, 46 P.3d 94 (City instituted civil forfeiture under previous version of the Ordinance and claimants moved to dismiss, arguing that the ordinance violated double jeopardy). As an example, if it turns out that the City does, in fact, seize and forfeit a vehicle based solely on probable cause for the arrest, regardless of whether the owner is ever *convicted* of DWI, then that vehicle owner will have the concrete injury, the motive, and—given the ACLU's willingness to intervene—the opportunity to mount an effective challenge to the Ordinance.

## Great Public Importance Doctrine

{33} It is clear that this Court can "confer" standing and reach the merits of a case regardless of whether a plaintiff meets the traditional standing requirements, based on a conclusion that the questions raised involve matters of great public importance. *See Kirkpatrick*, 86 N.M. at 363, 524 P.2d at 979 ("[I]t has been clearly and firmly established that even though a private party may not have standing to invoke the power of this Court to resolve constitutional questions and enforce constitutional compliance, this Court, in its discretion, may grant standing to private parties to vindicate the public interest in cases presenting issues of great public importance."). Though such cases conferring standing have generally arisen in the context of our original jurisdiction in mandamus, we have exercised our discretion to resolve the constitutionality of a statutory amendment on appellate review. *See Cobb v. State Canvassing Bd.*, 2006–NMSC–034, ¶¶ 38–39, 140 N.M. 77, 140 P.3d 498. Those cases deemed by this Court to raise issues of great public importance typically have involved "clear threats to the essential nature of state government guaranteed to New Mexico citizens under their Constitution—a government in which the three distinct departments, ... legislative, executive, and judicial, remain within the bounds of their constitutional powers." *State ex rel. Coll v. Johnson*, 1999–NMSC–036, ¶ 21, 128 N.M. 154, 990 P.2d 1277 (quoted authority omitted). We have also granted standing in election cases implicating the guarantee of "free and open" elections under Article II, Section 8 of the New Mexico Constitution. *See, e.g., Gunaji v. Macias*, 2001–NMSC–028, 130 N.M. 734, 31 P.3d 1008.

{34} Viewed in light of our precedent, the instant case does not raise the kind of questions that this Court has deemed to be of great public importance such that we would elect to confer standing when it is not otherwise present. The question of whether the Ordinance violates due process by allowing forfeiture of a vehicle based only on an arrest does not implicate "the integrity of state government," in terms of separation of powers, or "the state's definition of itself as a sovereign." *Forest Guardians*, 2001–NMCA–028, ¶ 35, 130 N.M. 368, 24 P.3d 803 (quoted authority omitted). Rather, as noted by the Court of Appeals, "[t]his case involves nothing more than a potential violation of certain specific citizens' due process rights, and therefore does not rise to the level of a clear threat to the essential nature of government." *Id.* We would be hard pressed to distinguish in any principled way the effects of this Ordinance from any other governmental activity that allegedly threatens to take property in violation of due process of law, but without already having done so. The issues raised by Plaintiffs, though certainly serious and of constitutional magnitude, involve questions of due process that are best addressed in the context of a specific case after enforcement of the Ordinance. *See Baca*, 2002–NMSC–017, ¶ 3, 132 N.M. 282, 47 P.3d 441 (quoting *Jolley v. State Loan & Inv. Bd.*, 38 P.3d 1073, 1078 (Wyo.2002), for proposition that "[t]he doctrine of great public interest or importance should be applied cautiously"); *State ex rel. Overton*, 81 N.M. at 33, 462 P.2d at 618 ("As desirable as it may be to have our opinion on questions of public importance as soon as possible, it is always dangerous to function in the abstract. We must avoid ill-defined controversies over constitutional issues." (quoted authority omitted)). Therefore, we decline to confer standing and reach the merits of this case.

## CONCLUSION

{35} For the foregoing reasons, we affirm the decision of the Court of Appeals reversing the district court and dissolving the permanent injunction.

{36} **IT IS SO ORDERED.**

WE CONCUR: EDWARD L. CHÁVEZ, Chief Justice, PATRICIO M. SERNA, PETRA JIMENEZ MAES, Justices, and MICHAEL E. VIGIL, Judge (sitting by designation).