**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: November 19, 2013

Docket No. 31,280

JOE TUNIS, SHIRLEY WHEELER,
JOHN EWERT, and PATTY SALESSES,

Plaintiffs-Appellants,

and

DONNA ROBBINS,

Plaintiff,

v.

COUNTRY CLUB ESTATES HOMEOWNERS
ASSOCIATION, INC.,

Defendant-Appellee.

APPEAL FROM THE DISTRICT COURT OF LUNA COUNTY
Daniel Viramontes, District Judge

Scott Hulse P.C.
R. Glenn Davis
El Paso, TX

for Appellants

L. Helen Bennett, P.C.
L. Helen Bennett
Albuquerque, NM

for Appellee

**OPINION**

**FRY, Judge.**

1

**{1}** Plaintiffs appeal from the district court's order dismissing their action under Rule 1-012(B)(6) NMRA for failure to state claims on which relief could be granted. The district court reasoned that, under the doctrine of res judicata, the judgment in an earlier declaratory judgment action precluded Plaintiffs' claims in the present case.[1] Because the district court considered matters outside the pleadings, we conclude that the motion to dismiss was converted to a motion for summary judgment.

**{2}** In the prior declaratory judgment action, Defendant Country Club Estates Homeowners Association, Inc. (the Association), by its then president, Plaintiff Ewert, sought a declaration that the Association's governing board was the board headed by Ewert (the Ewert Board) rather than a purportedly newly elected board (the Fletcher Board). The district court in the prior action apparently confirmed an arbitration award declaring the Fletcher Board to be the legitimate board. The Fletcher Board then sought in the same action to recover its attorney fees from the individual members—Plaintiffs in the present case—of the Ewert Board, but the district court in that case ordered the fees to be paid by the Association. Now, in the present case, pursuant to a provision in the Association's bylaws, Plaintiffs (who were members of the Ewert Board) are seeking indemnification of the attorney fees *they* incurred in defending against the attorney fee claim made by the Fletcher Board in the prior case.

**{3}** Relying on Section 33 of the Restatement (Second) of Judgments (1982), we first hold under the principle of claim preclusion that the judicial declaration of the parties' status in the prior declaratory judgment action does not preclude Plaintiffs' claim for indemnification of their attorney fees in the present action. Second, we conclude that under the principle of issue preclusion, the issue of Plaintiffs' indemnification claim was not actually litigated in the prior action. Third, in response to the Association's "right for any reason" argument, we hold that summary judgment on the alternative ground of lack of standing was improper due to disputed issues of material fact. We therefore reverse.

**BACKGROUND**

**{4}** This action on appeal and the prior case arose out of differing views by homeowners regarding the development of properties of the Association. A majority of the homeowners and the then-current board of directors, the Ewert Board, which included Plaintiffs, wanted limited expansion; a minority of the homeowners wanted greater expansion. The minority enlisted the developer to vote its undeveloped lots in a recall election with the goal of ousting Plaintiffs and the rest of the Ewert Board and electing a new board. The minority prevailed in a recall election, and the Fletcher Board, which represented the wishes of the

---

[1] As this Court recently stated in *Pielhau v. State Farm Mutual Automobile Insurance Co.*, "the term 'res judicata' encompasses both claim and issue preclusion." 2013-NMCA-___, ¶ 7 n.1 (No. 31,899, Sept. 23, 2013). We use the terms "claim preclusion" and "issue preclusion" as much as possible rather than the term "res judicata."

homeowner minority, took office. Four of the seven members of the ousted Ewert Board are Plaintiffs/Appellants in the case now before this Court.

{5} Following the recall election and installment of the Fletcher Board, the Ewert Board filed a complaint seeking a declaratory judgment as to the validity of the recall election and as to the legal governance of the Association. The complaint named as the plaintiff the Association "by its President, John Ewert, Plaintiff" and named as the defendant "Pamela Fletcher in her Representative Capacity as President of a Board of Directors Purportedly Elected on October 29, 2007, Defendants." We refer to this action as "the declaratory judgment action."

{6} During the pendency of the declaratory judgment action, the Fletcher Board submitted the issues to arbitration through the Association's architectural control committee.[2] The arbitrator determined that the recall election was effective and that the Fletcher Board was the duly constituted Board of the Association. The district court appears to have entered judgments confirming the award. The confirmed award apparently provided that if the Ewert Board did not turn over the Association's books and records or if it unsuccessfully tried to set aside the award, the Ewert Board might be liable for the Fletcher Board's attorney fees.

{7} In a post-judgment hearing apparently related to the Ewert Board's motion to vacate the court's judgments, the court addressed questions related to whether the Ewert Board members could be held individually liable for the Fletcher Board's attorney fees in the declaratory judgment action. As of that hearing, it appears that the Association had paid the attorney fees for the work done on behalf of the Ewert Board, at least through the arbitration. The issue at the hearing centered on the Fletcher Board's request for payment of its attorney fees. In regard to those attorney fees, the Ewert Board members argued that the Fletcher Board's attorney fees should not be assessed against the Ewert Board members individually because if they were, the Ewert Board members could seek indemnification from the Association under a clause in the Association's bylaws. They maintained that in order to avoid circuitous litigation, the Association should simply pay the Fletcher Board's attorney fees, just as it had paid the Ewert Board's attorney fees.

{8} The district court agreed with the Ewert Board and entered an order noting that because the Ewert Board's attorney fees were paid by the Association, "the fairest way to handle [the Fletcher Board's] attorney[] fees is for counsel to be paid by [the Association.]" This order appears to have ended the declaratory judgment action.

---

[2]The record on appeal does not contain any part of the arbitration proceeding, the judgments entered in connection with the merits of the declaratory judgment action, or any documents reflecting a motion by Plaintiffs to vacate any resulting judgment. Therefore, we rely in part on statements in hearings and briefs as to what appears to have occurred in the declaratory judgment action.

**{9}** Five of the seven members[3] of the Ewert Board then filed a complaint against the Association seeking recovery of $28,724.72, representing attorney fees they incurred to defend against the Fletcher Board's pursuit of fees against the Ewert Board members individually in the declaratory judgment action. Plaintiffs alleged entitlement to the fees under the indemnification clause contained in the Association's bylaws. In part, the provision states:

> [The Association] shall indemnify any person who was or is a party . . . to any . . . pending or completed action [or] suit . . . by reason of the fact that he or she is or was a director, trustee, officer, employee[,] or agent of [the Association] . . . against expenses (including attorney[] fees) . . . actually and reasonably incurred by him or her in connection with such suit, action[,] or proceeding if he or she acted in good faith and in a manner he or she reasonably believed to be in or not opposed to the best interests of [the Association.]

Plaintiffs further alleged that they "were involved in the [declaratory judgment action] by reason of the fact that they were members of [the Association's] Board of Directors" and also that "[t]he actions by Plaintiffs in connection with the [declaratory judgment action] were . . . taken in good faith and based on what was reasonably believed to be in or not opposed to the best interests of [the Association]." In its answer to the complaint, the Association asserted affirmative defenses of res judicata and failure to state a claim upon which relief can be granted, among other defenses.

**{10}** The Association, under the Fletcher Board's governance, filed a motion to dismiss based on its affirmative defense of res judicata. In their response to the motion to dismiss, Plaintiffs argued that case law permits their claim to be asserted in a subsequent lawsuit and that the two lawsuits involved neither the same parties nor the same claims. In regard to their party status, Plaintiffs stated that they "were not parties to the [declaratory judgment action], but to the extent they had any involvement in [that action] at all, it was in their representative capacities, not in their individual capacities, as is the case here."

**{11}** The Association responded, arguing, among other things, that Plaintiffs were barred because they were parties or "parties in privity" in the declaratory judgment action, they were individually named, and they could have asserted the claim in that action. The Association also argued that the indemnification issue was asserted and adjudicated in the declaratory judgment action.

**{12}** After a hearing on the motion to dismiss, the district court entered an order dismissing Plaintiffs' action for failure to state a claim upon which relief could be granted,

---

[3]Of the five Plaintiffs in the present case, only four have appealed the district court's dismissal. Therefore, all references to "Plaintiffs" refer to those who appealed.

4

not on res judicata grounds, but instead, in effect, on the basis of lack of standing. It held that the indemnification clause applies only to "persons who were or are part[ies] to litigation" and, because Plaintiffs alleged that they were not parties to the declaratory judgment action, they were not entitled to indemnification. Notably, neither the briefs related to the motion to dismiss nor the discussion in the hearing on the motion addressed whether Plaintiffs' complaint should be dismissed for lack of standing because they did not come within the terms of the indemnification clause.

**{13}** In a motion to reconsider the court's order, Plaintiffs argued for reconsideration of the dismissal because the Association's motion to dismiss was based on res judicata, not lack of standing, and because Plaintiffs had standing. In addition, within their motion to reconsider, Plaintiffs sought leave to amend their complaint "to clarify their right to relief" in an effort to establish standing.

**{14}** The district court heard the issues related to the motion to reconsider and entered an order determining that the district court in the declaratory judgment action "specifically addressed the issue of indemnification," that the parties had the opportunity then to further address the issue, that Plaintiffs "had the opportunity to seek recovery of attorney[] fees in that matter[,]" and that the parties "acted at their own peril in acting otherwise." The court then ruled that Plaintiffs' action was "barred by the doctrine of res judicata," and the court also, with no elaboration, denied Plaintiffs' motion for leave to amend.

**{15}** Plaintiffs appealed the district court's order. They assert two main points: the district court erred in dismissing on grounds of res judicata and, at a minimum, the court should have granted Plaintiffs leave to amend. We hold that the district court erred in dismissing Plaintiffs' complaint on grounds of res judicata.

**DISCUSSION**

**Standard of Review**

**{16}** "We review motions to dismiss a complaint for failure to state a claim under Rule 1-012(B)(6) de novo." *Madrid v. Vill. of Chama*, 2012-NMCA-071, ¶ 12, 283 P.3d 871, *cert. denied*, 2012-NMCERT-006, 294 P.3d 1243. Dismissal under Rule 1-012(B)(6) is appropriate where the principle of claim preclusion bars a plaintiff's complaint. *See Universal Life Church v. Coxon*, 1986-NMSC-086, ¶¶ 8-9, 105 N.M. 57, 728 P.2d 467 (holding that claim preclusion may be raised in a motion to dismiss as an affirmative defense barring a claim).

**{17}** However, "[w]here matters outside the pleadings are considered on a motion to dismiss for failure to state a claim, the motion becomes one for summary judgment[.]" *Foster v. Sun Healthcare Group, Inc.*, 2012-NMCA-072, ¶ 6, 284 P.3d 389 (second alteration in original) (internal quotation marks and citation omitted), *cert. denied*, 2012-NMCERT-006, 294 P.3d 1243. In ruling on the motion to dismiss and the later motion for

reconsideration in this case, the district court considered the following documents outside the pleadings: the complaint in the declaratory judgment action, the affidavit of Plaintiff Shirley Wheeler, the last order entered in the declaratory judgment action, and the Association's reference manual. We therefore treat the motion to dismiss as a motion for summary judgment. "We construe all reasonable inferences in favor of the non-moving party and will uphold a grant of summary judgment where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Id.* The present case involves a purely legal question as to whether res judicata applies to preclude Plaintiffs' claims.

**{18}** It is not entirely clear whether the parties and the district court focused on the claim preclusion aspect or the issue preclusion principle of res judicata. We therefore consider both aspects of res judicata in turn.

**The Res Judicata/Claim Preclusion Issue**

**{19}** The principle of claim preclusion "precludes a claim when there has been a full and fair opportunity to litigate issues arising out of that claim." *Kirby v. Guardian Life Ins. Co. of Am. (Kirby II)*, 2010-NMSC-014, ¶ 61, 148 N.M. 106, 231 P.3d 87 (emphasis, internal quotation marks, and citation omitted). The application of claim preclusion is supported by various rationales, including: "protect[ing] individuals from the burden of litigating multiple lawsuits[,] . . . promot[ing] judicial economy[,] and . . . promot[ing] the policy favoring reliance on final judgments by minimizing the possibility of inconsistent decisions." *Anaya v. City of Albuquerque*, 1996-NMCA-092, ¶ 11, 122 N.M. 326, 924 P.2d 735 (internal quotation marks and citation omitted).

**{20}** "The party asserting [claim preclusion] must satisfy the following four requirements: (1) the parties must be the same, (2) the cause of action must be the same, (3) there must have been a final decision in the first suit, and (4) the first decision must have been on the merits." *Kirby II*, 2010-NMSC-014, ¶ 61 (alteration, internal quotation marks, and citation omitted). "Whether the elements of claim preclusion are satisfied is a legal question, which we review de novo." *Id.*

**Section 33 of the Restatement (Second) of Judgments**

**{21}** In their briefs on appeal, Plaintiffs rely on Sections 26 and 36 of the Restatement (Second) of Judgments, neither of which is particularly helpful. However, in reviewing the Restatement, we determined that Section 33 is the starting point for consideration of claim preclusion in this case. That section addresses the preclusive effect of a judgment in a declaratory judgment action.

> A valid and final judgment in an action brought to declare rights or other legal relations of the parties is conclusive in a subsequent action between them as to the matters declared, and, in accordance with the rules of

6

issue preclusion, as to any issues actually litigated by them and determined in the action.

Restatement (Second) of Judgments § 33. Comment (c) to that section states, "When a plaintiff seeks solely declaratory relief, the weight of authority does not view him as seeking to enforce a claim against the defendant." Instead, the plaintiff is seeking a judicial declaration. "The effect of such a declaration . . . is not to merge a claim in the judgment or to bar it. Accordingly, regardless of outcome, the plaintiff or defendant may pursue further declaratory or coercive relief in a subsequent action." Restatement (Second) of Judgments § 33 cmt. c. Thus, a plaintiff may seek further relief in a later lawsuit, and "it is irrelevant that the further relief could have been requested initially." *Id.*

**{22}** In the present case, this means that the Ewert Board members are bound by what the district court apparently declared in the declaratory judgment action, which was that the Fletcher Board was the legitimate, governing board of the Association. Under Section 33, this is the only "claim" precluded by the declaratory judgment action. The Ewert Board's claim for indemnification in the present case is not precluded because it is not the same as the declaration sought and decided in the declaratory judgment action, and it is irrelevant under Section 33 whether the present claim could have been brought in the declaratory judgment action. *See Jamestown Vill. Condo. Owners Ass'n v. Mkt. Media Research, Inc.*, 645 N.E.2d 1265, 1270 (Ohio Ct. App. 1994) (relying on Section 33 of the Restatement and stating that "a declaratory judgment is not *res judicata* on an issue or claim not determined thereby even though it was known and existing at the time of the original action").

**{23}** However, under Section 33, the Ewert Board members would also be bound under the doctrine of *issue* preclusion by any issues that were actually litigated and necessarily decided in the declaratory judgment action. *See* Restatement (Second) of Judgments § 33 cmt. b. Indeed, it appears that the parties and the district court may have focused on the question of whether the indemnification *issue* had been precluded by the declaratory judgment action. This brings us to the crux of this appeal, which is whether the issue in the present case—the Ewert Board members' entitlement to indemnification for fees incurred in defending against the Fletcher Board's attorney fee claim against them—was actually litigated and necessarily decided in the declaratory judgment action.

**Res Judicata/Issue Preclusion Does Not Apply**

**{24}** For the doctrine of issue preclusion to apply, "the moving party must show that (1) the party to be estopped was a party to the prior proceeding, (2) the cause of action in the case presently before the court is different from the cause of action in the prior adjudication, (3) the issue was actually litigated in the prior adjudication, and (4) the issue was necessarily determined in the prior litigation." *Mascarenas v. City of Albuquerque*, 2012-NMCA-031, ¶ 31, 274 P.3d 781 (internal quotation marks and citation omitted). "Once the moving party has produced sufficient evidence to meet all four elements, the district court must determine whether the party to be estopped had a full and fair opportunity to litigate the issue in the

7

prior litigation." *Id.*

**{25}** Here, the parties spent a great deal of their time in the district court and on appeal arguing about whether the first element—identity of parties—exists. We do not address that element because we conclude that the third element is dispositive: the Association failed to establish that the indemnification issue raised in the present case was actually litigated in the declaratory judgment action.

**{26}** In the declaratory judgment action, the indemnification provision in the Association's bylaws came up in the context of the Fletcher Board's request to have the individual Ewert Board members pay the Fletcher Board's attorney fees incurred in defending the claim regarding which board was the legitimate governing body of the Association. The Ewert Board responded to this request by explaining to the district court that the Association had paid the Ewert Board's attorney fees through the arbitration and that a fair decision would be to require the Association to pay the Fletcher Board's fees as well. The Ewert Board pointed out that if the district court were to require the Ewert Board members to pay the Fletcher Board's fees, the Ewert Board members could seek indemnification from the Association under the Association's bylaws. Thus, the Ewert Board raised the indemnification provision to point out that the Association would in any event end up footing the bill for the Fletcher Board's attorney fees.

**{27}** The question asserted in the present case regarding the Ewert Board's attorney fees incurred in defending against the Fletcher Board's attorney fee claim never came up in the declaratory judgment action. Because it never came up, it was never litigated. The Association has not asserted that any evidence was introduced in that action regarding the fees being claimed in the present case, and certainly the district court's order in that case reflects no decision about those fees or whether the Ewert Board members were entitled to indemnification for them. While the district court in the declaratory judgment action stated that it found the Ewert Board's argument regarding indemnification "compelling," that comment was made in the context of the Fletcher Board's attorney fee claim against the Ewert Board members, *not* in the context of the Ewert Board members' claim in the present case regarding their own attorney fees. Because the Association has failed to establish that the issues in the present case were actually litigated in the declaratory judgment action, their defense of issue preclusion fails, and the district court's decision to the contrary was erroneous.

**Standing**

**{28}** Although the district court ultimately dismissed the present suit on the basis of claim preclusion, which we have concluded was in error, we may affirm a trial court's ruling on a ground that was not relied on below if reliance on the new ground would not be unfair to the appellant. *Meiboom v. Watson*, 2000-NMSC-004, ¶ 20, 128 N.M. 536, 994 P.2d 1154. The Association argues that Plaintiffs lacked standing and that we should affirm the district court's decision on that basis even though the district court did not rely on it in its final

8

order.  We are not persuaded.

**{29}**   The Association's argument based on standing is threefold.  First, it maintains that the bylaws' indemnification provision precludes Plaintiffs' claim because the provision does not allow indemnification related to claims brought "by or in the right of the corporation," and Plaintiffs asserted their claim in the declaratory judgment action ostensibly on the Association's behalf.  Second, it contends that Plaintiffs have not asserted a viable claim for common law indemnification.  Third, it argues that the bylaws only permit indemnification of "any person who was or is a party . . . to any pending or completed action [or] suit . . . by reason of the fact that he or she was a director, trustee, officer, employee or agent of [the Assocation]" for attorney fees incurred in that proceeding.  Because Plaintiffs alleged in their complaint that they were not parties to the declaratory judgment action, the Association contends, they are not able to avail themselves of the indemnification provision.

**{30}**   We conclude that it would be unfair to Plaintiffs to address the Association's first and second arguments because they were never made in the district court, Plaintiffs had no opportunity to develop responses to those arguments, and the district court never had the opportunity to rule on them.  The Association's third argument was raised below, and we therefore consider it.  We conclude that there are issues of fact that preclude summary judgment on that basis.

**{31}**   The Association's reference manual states that the Association will indemnify not only a party to the specified type of action, but also a person who "is threatened to be made a party" to such an action.  The Fletcher Board's request to personally seek attorney fees against the individual members of the Ewert Board can be viewed as a potential threat to make these individuals additional parties in the declaratory judgment action.  Finally, the last order entered in the declaratory judgment action indicates that there had been a potential for the individual liability of the Ewert Board members, thus suggesting that those members either were parties or could have become parties even if they were not originally parties to the action.  As a result, there is a factual issue as to whether Plaintiffs were parties to the declaratory judgment action or threatened to be made parties to it, or whether they were never parties to the action.  This issue is for the fact finder to decide.

**CONCLUSION**

**{32}**   For the foregoing reasons, we reverse the district court's order of dismissal and remand for further proceedings consistent with this Opinion.

**{33}   IT IS SO ORDERED.**

_____
**CYNTHIA A. FRY, Judge**

**I CONCUR:**

9

TIMOTHY L. GARCIA, Judge

JONATHAN B. SUTIN, Judge (dissenting).

SUTIN, Judge (dissenting).

{34}   I respectfully dissent.

{35}   In the post-judgment hearing apparently related to the Ewert Board's motion to vacate the court's judgments (the post-judgment hearing), the court addressed questions in regard to whether the Ewert Board members could be held individually liable for the Fletcher Board's attorney fees in the declaratory judgment action.  The Ewert Board members contended that the Ewert Board members were not parties to the declaratory judgment action since they were neither named plaintiffs nor personally served with any claim seeking to hold them individually responsible for the Fletcher Board's attorney fees. The Fletcher Board contended that the Ewert Board members were individually responsible principally because they initiated the declaratory judgment action and because they were individually set out in an averment of the complaint.

{36}   At the outset of the post-judgment hearing, a question arose as to who attorney Martin E. Threet represented.  Mr. Threet stated, "I represent the former [Ewert] board as a whole through their representative named as the plaintiff in the matter."  When opposing counsel indicated that one of the paragraphs in the motion to set aside the judgments applied just to the individual Ewert Board members, indicating that the movants were separate from the Association, the district court stated, "As far as I'm concerned he represents the prior board and every individual of it." Mr. Threet then responded, "That is correct, Your Honor."

{37}   The discussion of representation continued between the court and attorney Michael D. Stell in regard to assessing individual liability for attorney fees against the Ewert Board members, that is, "individuals[] who in their minds were simply honoring the charge that they had been given to represent the interest of the [A]ssociation and its membership[] through litigation of this case and until the issues were addressed."

> [Mr. Stell:]   The individuals themselves had never been named as parties in this lawsuit.  They [have] never been served, and they never [have] appeared.  And for that reason[,] this court does not have jurisdiction over the individuals.

> [The court]:   So you don't think they had an attorney that identified himself as representing the board of directors and each individual member which was ratified again this morning, every time I've asked that it's been the same response?  You don't think that's incongruous?

What do the [R]ules of [C]ivil [P]rocedure say, if I've got a lawyer[,] I've got to go out and serve the individuals? No. There's not a [R]ule of [C]ivil [P]rocedure, there's not a case in New Mexico that requires that. I send the stuff to the lawyer.

[Mr. Stell]: But the lawyer was representing the entity.

[The court]: No, he wasn't, he was representing the entity and each individual member of it.

[Mr. Stell]: I suppose that's kind of where we, perhaps, have different views because I think that Mr. Threet was representing the board as an entity[] and was not representing the individuals.

[The court]: So when I asked if he's representing each individual member, he said yes, he was wrong? There's a disagreement with counsel at this table about what he was doing for a year and a half.

[Mr. Stell]: Let me explain. When the case was first filed, it was filed on behalf of the entity, which the plaintiff's [sic] believed properly existed. And of course it was seeking the court's ruling as to whether that was, in fact, the case.

[The court]: And what happened in that case?

[Mr. Stell]: Exactly. Over time —

[The court]: What happened in that case?

[Mr. Stell]: Over[]time the [c]ourt decided that, in fact, this was not the proper—

[The court]: But before the court decided[,] what happened in the case? [The Fletcher Board] filed a responsive pleading and sought confirmation of the award. [The] pleadings were clearly directed at the board—I can't remember the names, the prior board and all [its] individual members.

[Mr. Stell]: Yes.

[The court]: And so if I've got a lawyer, I mean—I've got real problems with this. If you're representing these people individually and collectively and you never act otherwise, how is the court supposed to know? It was never raised. It sounds like a serious waiver problem to me.

11

[Mr. Stell]:     Well, I think as I say, Mr. Threet was representing the entity and while over time it became apparent there was some question about whether the entity existed, acknowledged he was representing them individually to the extent that they were involved in the matter. But, of course, . . . they themselves had never been . . . named individually, they've never been served, and they've never appealed it, individually.

After stating, in line with a good faith requirement contained in the indemnification clause, that "[t]hese people were not attempting to litigate [the declaratory judgment action] out of any bad faith, ill will, [or] malice[.]" Mr. Stell also stated:

They had nothing to gain from this and, . . . they had a price to pay. . . . And so we believe, in the end, whether they were ultimately right or not, they're entitled to indemnification from the [A]ssociation for the attorney[] fees incurred in connection with that. And we think it would just produce sort of a circuitous exercise if attorney[] fees were assessed and then indemnification claimed to be back to the [A]ssociation.

**{38}**     Following the hearing, the district court entered an order in March 2009 in which the court noted that "Mr. Threet was paid by [Association] funds" and that "the fairest way to handle [the Fletcher Board's counsel's] attorney[] fees is for counsel to be paid by [the Association,]" and the court set aside its judgment that had apparently awarded attorney fees against the Ewert Board members individually. As noted by the majority Opinion, this order appears to have ended the declaratory judgment action. Majority Op. ¶ 8.

**{39}**     In my view, the foregoing exchange between counsel and the court represents the issue that is at the crux of this appeal. That is, at the heart of the res judicata issue is how to characterize Plaintiffs' status in the two lawsuits. As members of the ousted board seeking reinstatement as the legitimate board, Plaintiffs were instrumental in filing the declaratory judgment action in the name of the Association "by its President, John Ewert." It appears obvious that, to the district court involved in the declaratory judgment action as well as to the court that heard the action now before this Court, Plaintiffs were taking irreconcilable or conflicting positions as to party status. Specifically, they could not be individually liable for the Fletcher Board's attorney fees because they were not parties in the declaratory judgment action, or if they were parties, it was only in a representative capacity. And yet they essentially were parties that had to defend against the Fletcher Board's pursuit against them personally in the declaratory judgment action.

**{40}**     It seems apparent that, in the courts' eyes in both actions, the Ewert Board members were responsible for initiating the declaratory judgment action and were represented individually and as a board by Mr. Threet, who agreed that he was representing "the prior board and every individual of it." According to Mr. Stell, Mr. Threet "represent[ed] the board as an entity," and he was paid out of Association funds. When the question of payment of the Fletcher Board's attorney fees was at issue in the declaratory judgment

12

action, instead of pinning the fees on the Ewert Board members individually, the court determined that a fair handling of the issue was to require the Association to pay those fees. Thus, at the close of the declaratory judgment action, the Ewert Board's attorney fees (incurred through June 2008), as well as the Fletcher Board's attorney fees, incurred in litigating the merits of the declaratory judgment action, were paid by the Association. At the close of the declaratory judgment action, however, nothing had specifically been raised in regard to fees that the Ewert Board's individual members had incurred to defend against the Fletcher Board's pursuit of payment of its attorney fees against the Ewert Board members individually. And therein lay the problem.

{41} The apparent positioning of the Ewert Board members individually in the declaratory judgment action and Plaintiffs, here, seems to have caused the courts in the two lawsuits to essentially turn a deaf ear to their positions and arguments. Under a common sense view of parties, no spin could separate the Ewert Board members and the Fletcher Board members from their personal involvements and statuses in the two lawsuits, including their apparent personal obligations to their attorneys for fees in the prosecution and defense of the various claims in the declaratory judgment action. On appeal, this Court should not reward the Ewert Board members and their counsel for essentially turning the question of their party-status in the declaratory judgment proceedings into a moving target.

{42} I do not agree with the Majority's statement that "[i]t is not entirely clear whether the parties and the district court focused on the claim preclusion aspect or the issue preclusion principle of res judicata." Majority Op. ¶ 18. In the proceedings below, it is clear that the parties and the court focused on res judicata/claim preclusion, and it is also clear that on appeal the Ewert Board members limit their argument to res judicata/claim preclusion. I would strictly adhere to the arguments made by the Ewert Board members on appeal, and I would affirm the district court's dismissal on res judicata/claim preclusion grounds. My analysis of the Ewert Board's (Plaintiffs') res judicata/claim preclusion argument follows.

**Consideration of Matters Beyond the Complaint**

{43} As an initial matter, I respectfully disagree with the Majority that the district court's consideration of matters outside the pleadings converted the motion to dismiss in this case into a motion for summary judgment. Majority Op. ¶ 1. The district court dismissed the complaint under Rule 1-012(B)(6) and did not treat the motion as one seeking summary judgment. The Association did not seek summary judgment in the district court, and the Association does not argue on appeal that Plaintiffs' motion to dismiss was transformed into a summary judgment proceeding or that the court's order of dismissal was an order granting summary judgment.

{44} Plaintiffs argue that because the complaint alleged that they were not parties in the declaratory judgment action, the court's finding that the first element of res judicata/claim preclusion was met could not have been based "upon the face of the complaint[.]" *See Valdez v. State*, 2002-NMSC-028, ¶ 4, 132 N.M. 667, 54 P.3d 71 (stating the principle that,

13

in reviewing Rule 1-012(B)(6) motions to dismiss, all well-pleaded factual allegations in a complaint are accepted as true). In Plaintiffs' view, res judicata could only apply at the Rule 1-012(B)(6) stage if they had stated in their complaint that they were parties in the declaratory judgment action.

**{45}** Plaintiffs' argument and presumably the Majority's view that the motion to dismiss was converted to a motion for summary judgment results from the district court's consideration of the record from the declaratory judgment action. In its order on Plaintiffs' motion for reconsideration, the district court indicated that its res judicata determination was based on a "review of the [declaratory judgment action] from which this case stem[med.]" Plaintiffs argue that the court's consideration of the record from the earlier case erroneously went beyond the pleadings and erroneously and prejudicially transformed the proceeding into a summary judgment proceeding without notice to Plaintiffs and with no opportunity for them to defend against such a proceeding. In making this argument, Plaintiffs appear to rely on Rule 1-012(C) for the proposition that nothing beyond the bare text of their complaint may be considered without converting a motion to dismiss to a summary judgment motion. *See id.* (stating that "on a motion for judgment on the pleadings, [if] matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment"). I would reject Plaintiffs' arguments.

**{46}** In oral argument before the district court on Plaintiffs' motion to reconsider, Plaintiffs' counsel acknowledged that "in a [Rule 1-0]12(B)(6) situation" courts "are entitled to look beyond the pleadings to documents integral to the pleadings[.]" This principle, though not fully vetted in New Mexico case law, is a staple in the federal system where it appears to be considered widely acceptable for courts faced with a motion to dismiss to consider matters of public record when such matters are referenced in the plaintiff's pleadings. *See, e.g.*, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (explaining that when faced with a Rule 12(b)(6) motion to dismiss, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"); *Navajo Nation v. Urban Outfitters, Inc.*, 935 F. Supp. 2d 1147, 1157 (D.N.M. 2013) (recognizing that no conversion from a motion to dismiss to a motion for summary judgment is required when a "court takes judicial notice of its own files and records and facts that are [a] matter of public record"); *Katz v. McVeigh*, 931 F. Supp. 2d 311, 320 (D.N.H. 2013) ("A court ruling on a motion to dismiss under Rule 12(b)(6) may consider not only the complaint but also facts extractable from documentation annexed to or incorporated by reference in the complaint and matters susceptible to judicial notice[,] . . . includ[ing] matters of public record, such as documents from prior state court adjudications." (internal quotation marks and citations omitted)). Plaintiffs' complaint was replete with references to the declaratory judgment action. That litigation was a matter of public record, and it was available to the court by virtue of its own record of the proceedings. *See Lopez v. LeMaster*, 2003-NMSC-003, ¶ 32, 133 N.M. 59, 61 P.3d 185 (permitting the district court to take judicial notice of its own records). Under these circumstances, I do not believe that it was error, in the context

14

of the Rule 1-012(B)(6) motion to dismiss, for the court to consider the record of the declaratory judgment action.

**{47}** Thus, notwithstanding the fact that the face of Plaintiffs' complaint did not state that the parties to the present lawsuit and the declaratory judgment action were the same, it was not error for the district court to reach that conclusion by considering the record from the declaratory judgment action. Nor did the court's consideration of its own record of the declaratory judgment action, which was referenced in Plaintiffs' complaint, transform the motion to dismiss into one for summary judgment.

**Same Parties**

**{48}** Plaintiffs argue that the Association—a jural entity in its own right—not the Ewert Board or its individual members, was the plaintiff in the declaratory judgment action. Plaintiffs point to the fact that the Association is a non-profit corporation, managed by a board of directors, and, like other corporations, it may sue and be sued in its own name. Plaintiffs argue that "[i]n a real sense, [the Association] is a legal entity separate and apart from its members and directors."

**{49}** Relying on the distinction between a board of directors acting on behalf of an incorporated association and the individual members of the board, Plaintiffs argue that they were not parties to the declaratory judgment action. As such, they argue that the cases of *Slide-A-Ride of Las Cruces, Inc. v. Citizens Bank of Las Cruces*, 1987-NMSC-018, 105 N.M. 433, 733 P.2d 1316, and *Kirby v. TAD Resources International, Inc. (Kirby I)*, 2004-NMCA-095, 136 N.M. 148, 95 P.3d 1063, support their conclusion that the first element of res judicata/claim preclusion—requiring the parties to be the same—is not present under these circumstances. Because the facts of *Slide-A-Ride* and *Kirby I* bear no resemblance to the facts of this case and because Plaintiffs rely on them for legal propositions rather than factual similarities, I will not engage in a lengthy recitation of their facts.

**{50}** Plaintiffs rely on *Slide-A-Ride* for the proposition that just as a corporation is a legal entity distinct from its shareholders, so too is the board of an association distinct from its individual members. *See* 1987-NMSC-018, ¶¶ 22-24 (concluding that a corporation and its shareholders were not the same party for res judicata purposes). Plaintiffs rely on *Kirby I* for the proposition that res judicata/claim preclusion does not bar the present lawsuit because "[t]o the extent that [they] were even mentioned in the original declaratory judgment suit, it was only in their representative capacity as board members of [the Association]" and not in their individual capacities. *See* 2004-NMCA-095, ¶¶ 1, 26, 28-29 (holding that res judicata did not bar the plaintiff's claim against her employee benefits plan, even though payments would be administered by an insurance company that had been dismissed from an earlier suit on res judicata grounds, because there existed an attempt to distinguish between the insurer in its capacity as a corporate entity versus its capacity as a fiduciary or representative responsible for administering the plan).

15

**{51}** Neither *Slide-A-Ride* nor *Kirby I* support Plaintiffs' position. I recognize that, generally, the individual members of a board are legally distinct from the entity that they represent. *See, e.g.*, NMSA 1978, § 53-8-17 (1975) ("The affairs of a corporation shall be managed by a board of directors."); NMSA 1978, § 53-8-25 (1975) ("The directors, officers, employees[,] and members of the corporation shall not be personally liable for the corporation's obligations."); *cf. Wirtz v. State Educ. Ret. Bd.*, 1996-NMCA-085, ¶¶ 4, 7, 122 N.M. 292, 923 P.2d 1177 (holding that the plaintiff's petition for a writ of certiorari to the district court naming the board as the respondent did not render the individual members of the board parties to the action); *Lava Shadows, Ltd. v. Johnson*, 1996-NMCA-043, ¶ 7, 121 N.M. 575, 915 P.2d 331 ("The fact that the partnership is a party does not in itself make the partners parties."). Nevertheless, under the facts of this case, as indicated in Plaintiffs' complaint, and as found by the district court in the declaratory judgment action, Plaintiffs' attempted distinction between the Association and the individual members of the Ewert Board does not overcome the first element of res judicata/claim preclusion.

**{52}** According to the Restatement, *supra*, § 39, "[a] person who is not a party to an action but who controls or substantially participates in the control of the presentation on behalf of a party is bound by the determination of issues decided as though he were a party." This notion of control over prior litigation as a factor in determining party status for res judicata/claim preclusion purposes was recognized in *Slide-A-Ride*, 1987-NMSC-018, ¶ 23, where the Court reasoned that res judicata did not apply because, among other reasons, "[t]here was substantial evidence to negate any claim that the corporation controlled the litigation in the first lawsuit or that the individual [shareholders] controlled the litigation in [the *Slide-A-Ride*] suit." The underlying rationale for taking into consideration one's control over litigation to which he or she was not a named party is that

> [a] person who assumes control of litigation on behalf [of] another has the opportunity to present proofs and argument on the issues litigated. Given this opportunity, he has had his day in court and should be concluded by the result. Such an assumption of control is often motivated by a direct interest the controlling party has in the litigation because its outcome will affect his rights or obligations to the person on behalf of whom he participates or against whom the litigation is conducted. . . . The fact of his assumption of control of the litigation is itself indicative that his interest is substantially equivalent to that of the party on whose behalf he appears.

Restatement, *supra*, § 39 cmt. a. In my view, the circumstances of this case call for an application of the foregoing principle.

**{53}** My view comports with that of the district court. The Ewert Board members (four of whom are Plaintiffs in the present case) controlled the declaratory judgment action. Plaintiffs' assumption of control of that litigation was motivated by their "direct interest" in the outcome because it would determine their right, as the Ewert Board, to act on behalf of the Association. *See id.* (stating that "an assumption of control is often motivated by a direct

16

interest the controlling party has in the litigation because its outcome will affect his rights or obligations to the person on behalf of whom he participates or against whom the litigation is conducted"). Having been ousted by the Fletcher Board, Plaintiffs retained counsel and presumably underwrote the declaratory judgment action in an effort to vindicate what they believed to be their rightful status as the "duly established, properly existing, and legally constituted [b]oard of [d]irectors of [the Association.]" To that end, I note that, among other things, Plaintiffs' complaint in the present case states the following.

> Because there were understandably under the circumstances significant questions concerning the legitimacy of the [Fletcher] Board, the [Ewert] Board decided that the proper course of action would be to submit the matter to an independent court of law for a fair and just adjudication. Consequently, to address and resolve the matter, the [Ewert] Board filed . . . a declaratory judgment action[.] . . .

> . . . The [declaratory judgment action] sought a judicial determination as to which of the two boards was in fact the duly established, properly existing, and legally constituted [b]oard of [d]irectors of [the Association] and thereby vested with the rights, powers, obligations, and responsibilities associated therewith.

{54}     In bringing the declaratory judgment action, although they purported to act on behalf of the Association and although they named the Association as the plaintiff in that action, the Ewert Board members were acting in their own interests to question the validity of the divestiture of their position and power, and their attack engine was fueled by hiring legal counsel and controlling the legal action. Viewed in this manner, it is clear that in bringing the declaratory judgment action, the only interests that the Ewert Board members sought to vindicate or protect were their own interests in regaining their status as the "legitimate board" with the power to act on behalf of the Association. That the litigation was brought in the Association's name does not change the implicit if not obvious fact that the declaratory judgment action was brought by and for the benefit of the individual Ewert Board members. *See id.* (explaining that the "assumption of control of the litigation is itself indicative that [one's] interest is substantially equivalent to that of the party on whose behalf he appears").

{55}     The indistinguishability of interests of the Ewert Board members and the Association on whose behalf they purportedly appeared in the declaratory judgment action was noted by the district court in that action. For example, in the post-judgment hearing the district court explained to the Ewert Board's counsel that after the Fletcher Board was elected, "[e]very action [the Ewert Board] took . . . they did as individuals[,]" including filing the declaratory judgment action. Additionally, as I indicated earlier, the district court in the declaratory judgment action viewed the Ewert Board's counsel as "representing the entity and each individual member of it"; that is, he was representing the Association and to the same extent he was representing the individual members of the Ewert Board. From the foregoing, the

court reasonably viewed the individual members of the ousted Ewert Board to be in control of the litigation—a view that is fully supported by their counsel's agreement in the declaratory judgment action that he "represent[ed] the prior board and every individual of it."

**{56}** By virtue of their control over the declaratory judgment action, the Ewert Board members had "the opportunity to present proofs and argument on the issues litigated." *Id.* In fact, beyond a mere "opportunity" to weigh in on the indemnification issue, the record reflects that the indemnification issue was brought into the declaratory judgment action by the Ewert Board members' counsel, Mr. Stell, the same counsel who is involved in their representation in the current lawsuit. At the post-judgment hearing, in regard to the Fletcher Board's claim for attorney fees, Mr. Stell argued, on behalf of the individual Ewert Board members, that "each of the[] individuals as a . . . present or past board member, would ultimately be entitled under the by[-]laws to indemnification for being involved in a lawsuit arising from conduct [in which] they engaged in good faith." Having thus raised the issue of the individual Ewert Board members' indemnification right in relation to the Fletcher Board's claim, I see no rational basis for Mr. Stell to have refrained from pursuing the issue further on behalf of the individual Ewert Board members during that hearing in regard to indemnification for their own fees incurred in defending against the Fletcher Board's claim. Having had and having foregone the opportunity to argue indemnification in that regard, Plaintiffs had their day in court and their claim should be precluded based on res judicata/claim preclusion by the result. *See id.*

**{57}** Based on their control of and interest in the declaratory judgment action, Plaintiffs are as much bound by the prior adjudication as if they had been named parties. *See Montana v. United States*, 440 U.S. 147, 154 (1979) ("[T]he persons for whose benefit and at whose direction a cause of action is litigated cannot be said to be strangers to the cause. . . . One who prosecutes or defends a suit in the name of another to establish and protect his own right, or who assists in the prosecution or defense of an action in aid of some interest of his own . . . is as much bound . . . as he would be if he had been a party to the record." (omissions in original) (alteration, internal quotation marks, and citation omitted)). Under these circumstances, I believe that the same-parties element of res judicata/claim preclusion was met. Plaintiffs' argument to the contrary provides no basis for reversal.

**Ripeness of the Indemnification Claim**

**{58}** Plaintiffs also claim that res judicata/claim preclusion does not apply because their indemnification claim was not ripe for review until the declaratory judgment action had been resolved. Plaintiffs' ripeness claim rests upon their argument that, having been billed by their attorney two months after the declaratory judgment action ended, they did not know at the time the litigation ended how much they owed to their attorneys and, therefore, they could not have asserted a claim for that debt in that litigation.

**{59}** "Generally, the purpose of ripeness is to conserve judicial machinery for problems

18

which are real and present or imminent, not to squander it on abstract or hypothetical or remote problems." *ACLU v. City of Albuquerque*, 2007-NMCA-092, ¶ 7, 142 N.M. 259, 164 P.3d 958 (internal quotation marks and citation omitted), *aff'd*, 2008-NMSC-045, 144 N.M. 471, 188 P.3d 1222. "The ripeness doctrine exists to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *City of Sunland Park v. Macias*, 2003-NMCA-098, ¶ 23, 134 N.M. 216, 75 P.3d 816 (internal quotation marks and citation omitted). "[A]n issue may be ripe where the threat of harm [is] sufficiently direct and immediate as to render the issue appropriate for judicial review at this stage." *Id.* (internal quotation marks and citation omitted).

**{60}**    Plaintiffs rely on *Casanova v. Marathon Corp.*, 256 F.R.D. 11, 14 (D.D.C. 2009), for the proposition stated in that case that "there appears to be a general rule that an indemnitor cannot be sued until the indemnitee is first held liable." (Internal quotation marks and citation omitted.) Further, Plaintiffs rely on *Invensys Inc. v. American Manufacturing Corp.*, No. Civ.A. 04-3744, 2005 WL 600297, at *3 (E.D. Pa. March 15, 2005), for the proposition stated in that case that "the mere expenditure of counsel fees does not constitute the accrual of a cause of action for indemnification." (Internal quotation marks and citation omitted.) And Plaintiffs also rely on *Smith International, Inc. v. The Egle Group, LLC*, 490 F.3d 380 (5th Cir. 2007), and *Bellevue v. Kafka*, Nos. 92 C 4589, 92 C 6663, 1994 WL 127213 (N.D. Ill. April 7, 1994), to support their argument that "courts have repeatedly held that an indemnity claim for attorney[] fees is not barred by res judicata when the indemnity claim is asserted in a different lawsuit from the suit where the fees are incurred."

**{61}**    Neither *Casanova* nor any other case cited by Plaintiffs supports their ripeness claim. Plaintiffs' reliance on the general rule stated in *Casanova* is misplaced. As explained by the *Casanova* court, the application of the principle that an indemnification claim is not ripe until the indemnitee is held liable is appropriate where the claim for indemnification is contingent upon future events, that is, the adjudication of the indemnitee's liability to a third party. 256 F.R.D. at 13-14. A related principle, applied in *Invensys Inc.*, is that "an indemnitee may recover attorney[] fees and costs incurred during the underlying litigation along with the actual judgment from the indemnitor." 2005 WL 600297, at *3-5 (alteration, internal quotation marks, and citation omitted) (dismissing, as premature, an indemnitee's claim for attorney fees associated with the ongoing litigation, the liability for which would be the subject of a later indemnification claim). Similarly, in *Smith International* and *Bellevue*, in another iteration of the same principle, the courts noted that until an underlying suit is resolved and financial liability settled, a claim for indemnification is premature. *See Smith Int'l*, 490 F.3d at 389 (explaining that the plaintiff's "cause of action [for indemnity] did not accrue until . . . after the . . . court entered its judgment against [it]"); *Bellevue*, 1994 WL 127213, at *2 (explaining that where a partnership agreement provided that the prevailing party would be entitled to recover attorney fees, the claim for attorney fees was premature until the original suit was adjudicated and the prevailing party was named).

**{62}**    In this case, unlike *Casanova* and cases similar to it, Plaintiffs' request for attorney fees was not contingent upon the resolution of an unresolved lawsuit pursuant to which

judgments were entered against Plaintiffs or where Plaintiffs might be entitled to reimbursement from a third-party indemnitor. The lawsuit that gave rise to Plaintiffs' attorney fees, the declaratory judgment action, did not end in a judgment against Plaintiffs for which Plaintiffs could seek to be reimbursed by the Association under its indemnification clause. Thus, I am not persuaded by Plaintiffs' argument that because they had yet to receive a final bill from their attorney, their claim for indemnification was premature or not yet ripe.

**{63}** The subject of the post-judgment hearing was the Fletcher Board's claim against the individual Ewert Board members for attorney fees. The court ruled that the fair approach was to require the Fletcher Board's attorney fees to be reimbursed by the Association since the Association had paid the Ewert Board's attorney fees until the arbitration determined which board was properly seated. I see no reason why the Ewert Board members, individually, could not have also pursued indemnification of their own attorney fees during this hearing. As indicated by the district court in its order on motion for reconsideration, in this case, the court in the declaratory judgment action had "specifically addressed the issue of indemnification," and "[t]he opportunity existed for the parties to further address the issue of indemnification, but they acted at their own peril in acting otherwise."

**The Two Causes of Action**

**{64}** In their fifth subpoint, Plaintiffs argue that because the present lawsuit does not involve "the same cause of action" as the declaratory judgment action, their complaint is not barred by res judicata/claim preclusion. *See Kirby II*, 2010-NMSC-014, ¶ 61 (stating that the second element of res judicata is that "the cause of action must be the same" (internal quotation marks and citation omitted)). Specifically, Plaintiffs argue that the claims at issue in the two lawsuits differ because "[t]here was no claim by Plaintiffs for indemnity of their own individual attorney[] fees in the prior declaratory judgment suit."

**{65}** In determining whether a lawsuit addresses the same "cause of action" as an earlier lawsuit, we consider whether "the claim extinguished by a first judgment includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." *Anaya*, 1996-NMCA-092, ¶ 7 (alteration, internal quotation marks, and citation omitted). The "concept of a transaction . . . connotes a natural grouping or common nucleus of operative facts[,]" and it involves considerations such as "whether the facts are related in time, space, origin, or motivation, [and] whether they form a convenient trial unit[.]" *Id.* ¶¶ 7-8 (internal quotation marks and citations omitted).

**{66}** Plaintiffs' claim for attorney fees in this case originated from their involvement in the declaratory judgment action. The scope of the Association's indemnification clause coverage was at issue in the February 2009 hearing; and the provision itself was presented as evidence at that hearing. Because Plaintiffs' individual liability for the Fletcher Board's attorney fees was also at issue in that hearing, I see no rational basis, nor do Plaintiffs

provide one, on which to conclude that Plaintiffs' claim for attorney fees can be said to have risen from a different "transaction" than the legal dispute between the Fletcher and the Ewert Boards that underlay the issues raised in the declaratory judgment action. Under the circumstances of this case, the district court properly determined that the second element of res judicata/claim preclusion was met. The third and fourth elements of res judicata/claim preclusion are not at issue in this appeal. *See, e.g.*, *Kirby II*, 2010-NMSC-014, ¶ 61 (setting out the four required elements of res judicata).

**Whether the District Court Erred in Denying Plaintiffs' Motion for Leave to Amend Their Complaint**

{67}    Plaintiffs argue, in the alternative, that "at a minimum" the district court should have permitted them to amend their complaint. The denial of a motion to amend is reviewed for an abuse of discretion. *See Stinson v. Berry*, 1997-NMCA-076, ¶ 9, 123 N.M. 482, 943 P.2d 129.

{68}    Because I would hold that Plaintiffs' claim for attorney fees is barred by res judicata/claim preclusion, I would conclude that an amendment to the complaint would be futile. *Cf. id.* ¶ 11 (holding that where the plaintiffs' "amended complaint could not withstand a motion to dismiss, the amendment would have been futile"). Owing to the futility of permitting the amendment, the district court cannot be said to have abused its discretion by denying Plaintiffs' motion for leave to amend the complaint. *See id.* Accordingly, I would determine that this issue presents no basis for reversal.

{69}    For the foregoing reasons, I would affirm the district court's order.

_____
**JONATHAN B. SUTIN, Judge**

21